1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10   BEN ALAN SNIPES,                         Civil No.      06-2531 LAB (AJB)

11                        Petitioner,
                                              **REPORT AND RECOMMENDATION**
12            v.                              **RE: DENIAL OF PETITION FOR WRIT**
                                              **OF HABEAS CORPUS**
13   JAMES E. TILTON, Warden,

14                        Respondent.

15

16   **I.      INTRODUCTION**

17        Ben Alan Snipes ("Snipes") a state prisoner proceeding pro se, has filed a First Amended

18   Petition for a Writ of Habeas Corpus ("FAP") pursuant to 28 U.S.C. § 2254 challenging his San Diego

19   Superior Court conviction in case number SCD175049 for unlawful taking of a motor vehicle,

20   receiving a stolen vehicle and reckless evasion.  (Lodgment No. 1, vol. 7 at 1505.)  Snipes asserts

21   claims alleging trial court bias and error, insufficiency of the evidence, prosecutorial misconduct, and

22   ineffective assistance of appellate counsel.  (*See* First Amended Petition "FAP" 7-41.)

23        The Court has considered the First Amended Petition, the Memorandum of Points and

24   Authorities in Support of the Petition, Respondent's Answer, the Memorandum of Points and

25   Authorities in Support of the Answer, Petitioner's Traverse, and all the supporting documents

26   submitted by the parties.  Based upon the documents and evidence presented in this case, and for the

27   reasons set forth below, the Court recommends that the Petition be **DENIED**.

28   //

1  **II.    <u>FACTUAL BACKGROUND</u>**

2          This Court gives deference to state court findings of fact and presumes them to be correct;

3  Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28

4  U.S.C.A. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding

5  findings of historical fact, including inferences properly drawn from such facts, are entitled to

6  statutory presumption of correctness).

7          A. <u>Prosecution Case</u>

8          On May 28, 2003, Antonio Ramirez parked his truck in a church parking lot
   while attending Bible study.  When he emerged from Bible study at around 8:30 p.m.,
9  the truck was gone.  Ramirez returned to the church and asked a friend (Mr. Mooney)
   for help.  Mooney said he would help Ramirez look for the truck after Mooney first
10 gave some people a ride home.  As Mooney was returning to the church after driving
   his friends home, he saw Ramirez's truck (with a single occupant) drive into a Taco
11 Bell parking lot and stop.  Mooney called 9-1-1 on his cell phone and remained in the
   area until a police unit arrived.  As the officer approached the parked truck, Mooney
12 saw the truck suddenly move rapidly in reverse, bouncing over a curb and perhaps
   striking the base of a lamppost, and then move forward and speed from the parking lot
13 with its tires screeching.

14         San Diego Police Officer Bassett responded to the dispatch and was the first
   officer to arrive at the Taco Bell.  She was in full uniform and was driving a standard
15 black and white police car with the red and blue lights on the roof.  She parked slightly
   to the rear and side of the truck.  She approached the truck and, when she was about
16 six feet from the truck, spotted Snipes sitting in the driver's seat.  Bassett drew her
   weapon and ordered Snipes to raise his hands.  Snipes looked directly at Bassett and
17 briefly raised but then lowered his hands.

18         Bassett continued to approach the truck, reached in and grabbed Snipe's hat.
   Snipes started the truck and backed up quickly, striking the concrete barrier, then sped
19 forward with the tires screeching.  He drove out of the parking lot and onto College
   Avenue.  Bassett returned to her vehicle and pursued Snipes with her lights and siren
20 activated; Snipes weaved in and out of traffic during the pursuit.  Bassett lost sight of
   Snipes at one point, and when she saw him again, he had crashed the truck into a
21 concrete wall approximately one mile from the Taco Bell parking lot.  By the time she
   arrived at the crash site, Snipes was on the ground and other police units had
22 converged on the scene.  The truck was damaged in the crash.

23         B. The Defense

24         Snipes claimed a friend drove the truck, with Snipes as a passenger, to the Taco
   Bell.  After the friend got out of the truck, Snipes slid to the driver's side and fell
25 asleep.  Snipes awoke to the sound of someone with a weapon screaming at him.  He
   instinctively started the truck and drove away; he conceded he drove recklessly
26 because he did not know he was being pursued by police and thought he had been
   approached by robbers.
27 (Lodgment No. 5 at 2-3.)

28 *//*

1    III.   **PROCEDURAL BACKGROUND**

2           On June 12, 2003, the San Diego County District Attorney's Office filed an information

3    charging Snipes with one count of unlawful taking and driving of a vehicle (Cal. Veh. Code

4    §10851(a)); one count of receiving a stolen vehicle (Cal. Penal Code § 496 (d)); one count of evading

5    an officer with reckless driving (Cal. Veh. Code § 2800.2(a)); and one count of driving under the

6    influence of alcohol/drugs (Cal. Veh. Code 23152(a)) (Lodgment No. 1,  vol. 1 at 1-2.)  The District

7    Attorney included an Informal Request for Discovery.  (Cal. Penal Code § 1054.3.)  Snipes was

8    further charged with a violation of the "Three Strikes Law" for his February 11, 1983 conviction.

9    (Cal. Penal Code §§ 667(b)-(i), 1170.12.)  On November 12, 2003, the District Attorney's Office filed

10   an Amended Information which was the same as the previously filed Information, except for the

11   deletion of the informal request for discovery pursuant to California Penal Code section 1054.3, and

12   the addition of Snipes' February 4, 1999, prison prior for aggravated fleeing or attempting to elude.

13   (Cal. Penal Code §§ 667.5(b), 668.)

14          On December 9, 2003, the jury trial commenced.  (Lodgment No. 17, vol. 8 at 899.)  On

15   December 15, 2003, the jury convicted Snipes of one count of taking a vehicle without the owner's

16   consent, one count of receipt of a stolen vehicle, and one count of evading a peace officer with

17   reckless disregard.  (Lodgment No. 1, vol. 7 at 1505-06.)

18          Snipes filed a motion for new trial on January 7, 2004.  (Lodgment No. 1, vol. 6 at 1188.)  A

19   hearing was held on January 14, 2004, after which the trial judge then denied the motion.  (Lodgment

20   No. 17, vol. 12 at 1616.)

21          Snipes appealed his conviction to the California Court of Appeal.  (*See* Lodgment No. 2.)  The

22   state court affirmed the judgment on April 27, 2005.  (Lodgment No. 5, *People v. Snipes*, No.

23   D043652, slip op. (Cal. Ct. App. Apr. 27, 2005.)  Snipes filed a petition for review in the California

24   Supreme Court which was denied.  (Lodgment No. 6, Petition for Review, *People v. Snipes*, No.

25   S134374 (Cal. Jun. 6, 2005); Lodgment No. 7, *People v. Snipes*, No. S134374, order (Cal. Jul. 13,

26   2005).)

27   //

28   //

On September 28, 2005, Snipes submitted a petition for writ of habeas corpus with the California Superior Court, and on November 21, 2005, he filed a supplement to the writ of habeas corpus.  (Lodgment No. 8, Petition for Writ of Habeas Corpus, *In re Snipes*, No. HC 18317 (Sept. 28, 2005); Lodgment No. 9, Supplement to Petition for Writ of Habeas Corpus, *In re Snipes*, No. HC 18317, Nov. 21, 2005.)  The petition was denied in a reasoned opinion.  (Lodgment No. 10,  *In re Snipes*, No. HC 18317, order.)

On December 5, 2005, Snipes filed a petition for writ of habeas corpus with the California Court of Appeal, which was denied on February 21, 2006.  (Lodgment No. 11, Petition for Writ of Habeas Corpus, *In re Snipes*, No. D047651 (Cal. Ct. App. Dec. 5, 2005); Lodgment No. 12, *In re Snipes*, slip op. (Cal. Ct. App. Feb. 21, 2006).)

Snipes filed a Petition for Writ of Habeas Corpus with the California Supreme Court on March 20, 2006 which was summarily denied on May 24, 2006.  (Lodgment No. 13, Petition for Writ of Habeas Corpus, *In re Snipes,*  No. S141996 (Cal. Mar. 20, 2006); Lodgment No. 14, *In Re Snipes*, No. S141996 (Cal. May 24, 2006).)  On July 12, 2006, Snipes filed a Petition for Writ of Certiorari with the United States Supreme Court, which was summarily denied.  (Lodgment No. 15, Petition for Writ of Certiorari, *Snipes v. California*, No. 06-5313 (Jul. 12, 2006); Lodgment No. 16, *Snipes v. California*, No. 06-5313, order (Oct. 2, 2006).)

On November 15, 2006, Snipes filed his Petition for Writ of Habeas Corpus in this Court [doc. no. 1].  Snipes filed a First Amended Petition on January 25, 2008, which the Court deems the operative pleading in this case [doc. no. 39].  Respondent filed an Answer on April 30, 2008 [doc. no. 51], and Snipes filed a Traverse on May 27, 2008 [doc. no. 54].

**IV.**   **DISCUSSION**

**A.**   **Scope of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

The current Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West 2006) (emphasis added).

The parties do not dispute that the Petition was timely filed. Therefore because the Petition was filed after AEDPA's effective date, Snipes must satisfy either section 2254(d)(1) or section 2254(d)(2) to obtain habeas relief on the claims that were adjudicated on the merits in state court. *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).

The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, *id.* at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order "supplies no reasoned decision," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (citing *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000)). A state court,

however, need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

**B.    Analysis**

Snipes raises seventeen grounds for relief in his Petition: (1) the trial court was prejudiced and biased; (2) the trial court erroneously denied his motion for a continuance; (3) the trial court deprived him of his right to counsel; (4) the trial court denied his right of access to legal materials to prepare for trial; (5) there was insufficient evidence to support the reckless evasion conviction; (6) his stipulation to an element of reckless evasion was not knowing and voluntary; (7) his stipulation constituted an impermissible presumption; (8) the trial court misapplied the specific intent requirement of reckless evasion; (9) the trial court improperly induced him to testify; (10) the trial court failed to give the jury "unknown assailant" instruction; (11) the trial court failed to instruct the jury with CALJIC 2.11.5; (12) he was improperly convicted of both taking and possession, a dual conviction; (13) the trial court failed to give a lesser included offense instruction; (14) the prosecutor committed multiple acts of misconduct during closing argument; (15) ineffective assistance of appellate counsel; (16)  the state court relied on impermissible factors in determining Snipes sentence, and (17) cumulative error.  (FAP at 7-41.)

Respondent argues that Snipes procedurally defaulted claims 1, 2, 4, 9, 10, 11, 12, 13, and 14, and part of claim 3 because he failed to raise them on direct appeal.  (Mem. P&A Supp. Answer at 3.) Respondent further contends that claims 8 and 13 do not present a federal question, and the remainder of Snipes claims should be denied because the state courts' denial was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Answer at 3a.)

**1.    Procedural Default**

The first issue this Court must address is whether claims 1, 2, 4, 9, 10, 11, 12, 13, and 14, and claim 3 (except for the portion of this claim alleging denial of advisory counsel) are procedurally barred as Respondent contends.  If they are not, then this Court must address the merits of those claims.

06cv2531

1    Respondent argues that Snipes' claims are procedurally barred because he did not seek direct

2    review of the claims in the California Supreme Court.  (Mem. P&A Supp. Answer 3.)   The last

3    reasoned decision on these claims is the California Court of Appeal order denying habeas relief, which

4    denied these claims on the procedural ground that Snipes could have raised them on direct appeal but

5    did not do so, citing *In re Harris*, 5 Cal. 4th 813, 829 (1993).  (Lodgment No. 12.)

6    A federal habeas court will be prevented from addressing the merits of a claim due to a

7    procedural default only if the applicable state bar is "adequate" to support the judgment and

8    "independent" of federal law.   *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).   A state

9    procedural rule is "independent" if it is not interwoven with federal law.  *LaCrosse v. Kernan*, 244

10   F.3d 702, 704 (9th Cir. 2001).  A state rule is "adequate" if it is "clear, consistently applied, and well-

11   established" at the time of the default.  *Calderon v. United States District Court*, 96 F.3d 1126, 1129

12   (9th Cir. 1996).  The Ninth Circuit has held that because procedural default is an affirmative defense,

13   Respondent must first have "adequately pled the existence of an independent and adequate state

14   procedural ground . . . ."  *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir 2003).  In order to place the

15   defense at issue, Snipes must then "assert[] specific factual allegations that demonstrate the

16   inadequacy of the state procedure . . . ."  *Id.*  The "ultimate burden" of proving procedural default,

17   however, belongs to the state.  *Id.*  If the state meets its burden under *Bennett*, federal review of the

18   claim is foreclosed unless a petitioner can "demonstrate cause for the default and actual prejudice as

19   a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will

20   result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

21   Respondent  argues that Snipes' claims are barred by the imposition of the state bar of

22   timeliness which arises from Petitioner's failure to present the claims on direct appeal.  *See In re*

23   *Robbins*, 18 Cal. 4th 770, 788 n.9 (1998)( *In re Clark* "serves to notify habeas corpus litigants that we

24   shall apply the [timeliness] rule when we are faced with a petitioner whose prior petition was filed

25   after the date of finality of *Clark*"); *see also In re Clark*, 5 Cal. 4th 750, 797-98 (1993)(the general rule

26   is still that, absent justification for the failure to present all known claims in a single, timely petition

27   for writ of habeas corpus, successive and/or untimely petitions will be summarily denied) .

28   //

However, established precedent in this Circuit dictates that a court's decision on the issue of procedural default is to be informed by furthering "the interests of comity, federalism, and judicial efficiency." *Boyd v. Thompson,* 147 F.3d 1124, 1127 (9th Cir. 1998). Thus where, as here, deciding the merits of a claim proves to be less complicated and less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claims on their merits and forgo an analysis of cause and prejudice. *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982).

**Judicial Bias (Claim 1)**

In ground one, Snipes contends that his due process rights were violated because the trial judge was biased and prejudiced against him. Snipes argues that (1) the prosecutor and judge manipulated Snipes into stipulating to prior convictions for purposes of impeachment with the understanding they would not be used as enhancements, but after Snipes admitted priors, they were used as enhancements, and (2) the court ordered Snipes to produce his sixty plus witnesses for foundational hearings, but then released the subpoenas on the twenty-one officers indefinitely when he called them. (FAP at 7-9.) As discussed above, the state courts imposed a procedural bar and declined to review the merits of this claim. When a state court does not reach the merits of a claim, it is reviewed de novo. *Pirtle*, 313 F.3d at 1167.

The United States Supreme Court has long held that a criminal defendant has a due process right to "[a] fair trial in a fair tribunal." *In re Murchison*, 349 U.S. 133, 136 (1955). A defendant attempting to prevail on a claim of judicial bias must first overcome the "presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). To prevail on a claim of judicial bias or prejudice, a petitioner must show that the judge "prejudged, or reasonably appears to have prejudged, an issue." *Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992).) A petitioner can overcome the presumption of judicial honesty and integrity in two ways: "[T]he proceedings and surrounding circumstances may demonstrate *actual bias* on the part of the adjudicator", or "the adjudicator's pecuniary or personal interest in the outcome of the proceedings may create an *appearance of partiality* that violates due process, even without any showing of actual bias." (*Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) (distinguished on other grounds by

1   *Lumbreras v. Roberts*, 319 F.Supp.2d 1191(9th Cir. 2004) (emphasis in original).  "In the absence of

2   any evidence of some  extrajudicial source of bias or partiality, neither adverse rulings nor impatient

3   remarks are generally sufficient to overcome the presumption of judicial integrity, even if those

4   remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases'". *Liteky*

5   *v. United States*, 510 U.S. 540, 555  (1994); *see United States v. Martin*, 278 F.3d 988, 1005 (9th Cir.

6   2002);  *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008).

7                                        *Stipulation to Prior Conviction*

8            Snipes contends that Judge Krauel demonstrated bias when the prosecution and trial court

9   knowingly misled him into admitting seven prior convictions for purposes of impeachment, assuring

10  him that he would "still be afforded a bifurcated hearing as to any of the alleged 7 prior felony

11  convictions for enhancement/sentencing related purposes."  (FAP at 7.)  According to Snipes, the

12  prosecution and court told him he would suffer no prejudice as a result of admitting the prior

13  convictions for impeachment purposes because the use of priors for impeachment required a different

14  standard of proof than their use as enhancements; however when he admitted the priors for

15  impeachment purposes, they insisted he might "as well admit to the single prison prior since it would

16  be ridiculous to deny it once [he] already admitted its existence when testifying and impeached [sic]."

17  (*Id.*)

18          In Respondent's view, the court correctly advised Snipes on California law during the

19  discussions about his prior convictions and their uses, and none of the court's comments showed any

20  bias or prejudice.  (Mem. P&A Supp. Answer at 7.)

21          At a motion hearing on October 14, 2003, Snipes admitted a prior strike conviction for armed

22  robbery and successfully moved for a bifurcated trial on his remaining prior convictions.  (Lodgment

23  No. 17, vol 3 at 267-71.)  The prosecutor identified one prison prior which would be the issue of the

24  bifurcated trial for enhancement purposes, a 1999 felony conviction in Florida for aggravated fleeing

25  and eluding, among other charges.  (Lodgment No. 17, vol. 6 at 464-66; Lodgment No. 1, vol 7 at

26  1495.)  The trial court repeatedly questioned the prosecutor as to whether the he was certain the prior

27  was only to be considered as a prison prior and not as a strike prior, stating "[w]hat I'm trying to do

28  is to make sure that Mr. Snipes knows what he's facing along with this Court so that I am prepared

for any . . . detours or changes of direction. ¶ If that case were a 25-to-life case - - which it could be if that was a serious or violent felony in 1999 - - we should know that at this juncture." (Lodgment No. 17, vol. 6 at 466.)  Once the court was satisfied that the prosecution was only going to pursue the 1999 prior as a prison prior, the court asked Snipes "do you understand the discussion we just had?" (*Id*. at 467.)  To which Snipes said "I do, your honor." (*Id*.)   The court then addressed the priors which would be used for impeachment purposes, at which time the prosecution stated it would also be using the 1999 prior for impeachment.  (*Id*. at 470.)  The parties proceeded to winnow the prior convictions down to only the seven felonies of moral turpitude, including the 1999 prior, which Snipes then admitted for impeachment purposes. (*Id*. at 468-78.)  During the discussion, the trial court repeatedly asked Petitioner whether he understood the consequences of the admission of those convictions for impeachment purposes and asked him whether he felt it properly sanitized the priors, to which Snipes responded, "I do, your honor." (*Id*. at 468, 472, 475, 479.)

In light of his admission, the parties asked whether the prosecution was still going to be required to prove the 1999 prison prior in the bifurcated hearing.  The court conducted the following discussion in response:

| Court: | You have admitted for purposes of impeachment the two prior felonies [1983 strike prior and 1999 prison prior] that we will revisit for enhancement purposes. |
|---|---|
| Snipes: | Yes, your Honor. |
| Court: | That admission can be used to prove the enhancements. The prosecutor is making the point that there wouldn't be too much for the jury to deal with. . . [h]ave you thought about how you want to deal with those for purposes of enhancements? |
| Snipes: | I want to reserve those issues, your Honor. I believe, you know, at the very least, if I was to lose this case, maybe the jury won't, you know, find those facts. |
| Court: | They might not.  But there won't be too much for them to consider if you've already admitted them for impeachment purposes. |
| Snipes: | I understand. |
| Court: | . . . There's nothing from a procedural point of view, given the admission, that I feel it's appropriate to have the jury look at. |
| Snipes: | Actually, I was banking on the pardon aspect.  But I agree, it would be a waste of time.  Likely, a pardon is very slight if they were to convict. ¶ I'd go ahead and admit to them. |
| Court: | You'll admit them at this point? |
| Snipes: | I will, your Honor. |
| Court: | And you understand that by admitting those allegations that you're - - - if you are going to be sentenced, that will enhance the sentence that you might receive or the prison prior? . . . <br><br>. . . . <br>Do you understand that? |

1
Snipes:      I do, your Honor.
Court:       And you are admitting both of those prior allegations?
2
Snipes:      I do.

3  (*Id.* at 481-83.)

4  The Court then advised Snipes of his constitutional rights to a jury trial on the issue of the priors under

5  California law, and that by admitting the priors he waived those rights.  (*Id.* at 484.)

6          Rather than demonstrating bias, the trial court showed considerable patience during the hearing

7  and repeatedly asked Petitioner whether he understood the consequences of his admission to the

8  priors, including the 1999 felony.  When the enhancement issue arose, the court stated that it was up

9  to each defendant how to balance the desire to admit priors for impeachment purposes against the

10  potential risk in terms of sentencing, asked Snipes how he wanted to proceed, and informed him in

11  a neutral fashion that his admission to the 1999 prior gave the jury little to consider if it was required

12  in the bifurcated hearing to determine whether Snipes sustained that same prior conviction.  The trial

13  court demonstrated no extrajudicial source of bias or partiality, instead making every effort to advise

14  Snipes and confirm his understanding of the effects of his admission.  *See Larson*, 515 F.3d at 1067.

15  Further, the evidence does not support Snipes' claim that the trial court manipulated him into

16  admitting the prior for impeachment purposes in order to use it for enhancement purposes.

17  Accordingly, Snipes has not overcome the "presumption of honesty and integrity in those serving as

18  adjudicators."  *See In re Murchison*, 349 U.S. 133, 136 (1955).  *Withrow v. Larkin*, 421 U.S. 35, 47

19  (1975).  Petitioner is not entitled to habeas relief on this claim.

20                                          *Witness Production*

21          Snipes argues that the trial court demonstrated bias by initially requiring that he produce all

22  relevant witnesses at a foundational hearing, and then releasing the police officers Snipes called to the

23  hearing, resulting in him losing essential witnesses.  (FAP at 8; Mem. P&A Supp. FAP at 4.)

24  According to Snipes, he lost time investigating witnesses because his first investigator was fired on

25  November 7, 2003, and the new investigator did not have sufficient time to interview police witnesses

26  prior to the relevancy hearing on December 1, 2003.  (FAP at 7-8.)  Rather than allow him the

27  opportunity to place the officers on the stand to find out what they knew, the court released them from

28  their subpoenas indefinitely.  (*Id.* at 8.)

1    Respondent argues that the court gave Snipes appropriate guidance for the foundational

2    hearing, telling him that it would not allow him to call numerous witnesses without first doing some

3    preliminary investigation as to what the witnesses would testify, stating that the time for research is

4    prior to trial.  (Answer at 7.)  When Snipes called twenty-one police officers for the hearing without

5    first doing any preliminary investigation as to what they would testify, the court stated it was an abuse

6    of process, and released them, which Respondent contends did not reflect bias or prejudice, but

7    concern with conserving judicial resources.  (*Id.*) .

8    The trial court did not demonstrate bias or prejudice in its dismissal of police officer witnesses

9    at the foundational hearing.  On November 10, 2003, the parties agreed that the trial would begin on

10   December 1, 2003, and the court informed Snipes that he was required to have any witness available

11   that day for whom he would need to have a "foundation from their lips."  (Lodgment No. 17, vol. 5

12   at 422.)  On December 1, 2003, the court conducted in limine hearings on various matters.  (Lodgment

13   No. 17,  vol. 6. at 427.)  Snipes began by arguing that the court had been biased in not allowing him

14   more time to prepare because he had not had enough time with his new private investigator to do the

15   necessary research and subpoena the witnesses he needed for the hearing. [1]  (*Id.*)  The court asked

16   Snipes if he was moving for a continuance of the trial date, to which he responded that he was.  (*Id*

17   at 430.)  The court responded that it understood Snipes had a problem getting his subpoenas out, but

18   that it would address other preliminary matters before addressing the continuance motion, to which

19   Snipes agreed.  (*Id.*)

20   During the proceedings, the court went over the potential witness list for each party, repeatedly

21   advising Snipes that the purpose of a 402 hearing was to establish a proper foundation for each witness

22   scheduled to testify at trial, and that it was inappropriate to use the trial for investigation.  (*Id.* at 431,

23   504-05, 510, 514)  For each of the police officers on Snipes's witness list, the court asked Snipes if

24   he could state why each officer's testimony was relevant, and Snipes answered that he had not had

25   time to investigate.  (*Id.* at 513. )  The court advised Snipes that it would take those officers off the list,

26

27   _____

28       [1]  Snipes filed a motion to remove his first investigator on November 3, 2003, for failure to do an
     adequate job, and a new private investigator, Ballard was appointed thereafter. (Lodgment No. 1, vol. 5 at
     1021.)

1  but that if at a later time Snipes could tell the court that the witness was relevant and competent, it

2  would allow a 402 hearing on that witness.  (*Id*. at 514, 518-19, 526.)

3        After the potential witness list was narrowed through this process, the court stated that trial

4  would not begin until Wednesday, December 3, 2003, and that no witnesses would be called until the

5  following Monday, December 8, 2003, giving Snipes five additional days to research his potential

6  witnesses.  (Lodgment No 17, vol. 6 at 593, 597.)  On the next day, December 2, 2003, the court

7  granted Snipes's request for twenty additional hours for his investigator to further develop the

8  necessary foundation for the police officer witnesses.  (*Id*. at 595-96.)  Despite the court's continuance

9  and approval of more hours for his investigator, Snipes argued that he was being denied all his

10  witnesses and that the additional days would not give him enough time.  (*Id.* at 620-21.)  The court

11  responded, "I haven't told you you can't call witnesses.  What I said was you hadn't presented to me

12  a sufficient basis for me to allow them to testify. . . ¶ Once you provide a basis that's sufficient, then

13  I can have your witnesses testify."  (*Id*. at 621.)  The court went on, "As to the timing of trial . . .

14  you've had these witnesses listed, that I know about, from, I think, about September when we first

15  were talking about who you were going to call.  So the fact that the subpoenas didn't get out in time

16  . . . that was your choice or your doing.  Two months is enough to prepare."  (*Id*. at 622.)  At the close

17  of the proceedings, Snipes stated he would be subpoening all the police officers because he could not

18  get them interviewed and wanted to "see if we can get some 402 on them as well."  (*Id*. at 673.)  The

19  court stated, "calling a lot of officers to trial when you don't know what they're going to be saying

20  or you don't know where they were standing or situated, that's something that your investigator is

21  supposed to sort out before I have to deal with those.  But they won't be called as witnesses in this

22  case."  (*Id*. at 674.)

23        On Monday, December 8, 2003, the court held a 402 hearing, stating that it would be "looking

24  to make sure that [the witness's] proffered testimony will be relevant and that they are competent to

25  testify as the defense wants."  (Lodgment No. 17, vol. 7 at 686.)  Snipes responded that his

26  investigator, Mr. Ballard ("Ballard") had made a mistake and subpoenaed all the Mid-City police

27  officers for the 402 hearing.  The trial court confirmed "there are a lot of officers that have been

28  subpoenaed here that we don't need."  (*Id*.) To which Snipes stated, "[e]xactly."  (*Id*.) However, when

1    the court attempted to identify which of the police officers were improperly subpoenaed, Snipes

2    contended that he was calling all of them at trial, so none could be released.  (*Id*. at 687.)  The court

3    reminded Snipes,

4    |        Court:    | I've advised you at least three times that the trial is not an opportunity to

5    discover what a witness might be able to say.  You need to have some basis for telling me that they are going to testify to something that's relevant to this case and that their testimony will not be cumulative.  ¶ Are you telling me that you

6    don't - - aren't prepared to do that with these witnesses?

     Snipes:   I'm prepared to take a proffer and state that these officers were on the scene .

7    . . and, that I anticipate they will be able to testify to the fact that will show I was not at fault at the accident.

8    (*Id*. at 688.)

9    The Court then excused the officers who had not been properly subpoenaed[2] and noted:

10   . . . there was no reason for [those officers] to be here.  I considered that was an abuse of the process.  I'm not taking any action on that.  I'm noting that and, hopefully that

11   won't reoccur again. . . What you did this morning was not proper because you used my court process to bring people in that didn't need to be here.  That's all I'm going

12   to say on it and I'm not taking any action on it.  I'm just telling you that that's not a proper way to conduct yourself.  I would say that to a brand new lawyer or experienced

13   lawyer in the same circumstance.

14   (*Id*. at 695, 853-54.)

15   Contrary to Snipes assertions, the dismissal of the police officers did not demonstrate bias on

16   the part of the trial court.  The trial court made repeated attempts to explain how a foundation is laid

17   to determine whether a potential witness is credible and will have relevant testimony.  Yet despite the

18   court's warning to present only those witnesses for whom Snipes could provide a foundation, Snipes

19   proceeded to have his investigator call over twenty police officers as a way to find out what they

20   knew.  The court did not level any consequences on Snipes for his direct disregard for the court's

21   orders, instead simply stating that it would take note and reminded Snipes to obey the court's orders

22   in the future.  The record demonstrates that the trial court did not demonstrate bias, but instead made

23   repeated attempts to ensure Snipes understood the parameters of calling potential witnesses, and

24   refrained from holding Snipes in contempt when he called over twenty Mid-City police officers in

25   violation of the court's admonishments.  *See Larson*, 515 F.3d at 1067.  Snipes has again failed to

26   allege facts showing either actual judicial bias, or the appearance of partiality.  *See Stivers*, 71 F.3d

27

28   [2]A foundation had previously been laid for the testimony of Officers Benavides and Huggins, who were not released at this time.  (Lodgment No. 17 vol. 7. at 693.)

1    at 741.  Accordingly, Snipes received a "fair trial in a fair tribunal."  *See Murchison*, 349 U.S. at 136;

2    *Withrow*, 421 U.S. at 47.  For the foregoing reasons, this Court recommends claim one be **DENIED**.

3                          **Denial of Motion for Continuance (Claim 2)**

4            Snipes argues that his federal due process rights were violated when the trial court denied his

5    motion for a continuance with prejudice.  (FAP at 9-10.)  Snipes contends that the trial court denied

6    his motion despite knowing that Snipes had lost his first private investigator, had just received

7    approval for additional investigation hours, and that Snipes stated he was not prepared to go to trial.

8    (Mem. Supp. P&A at 5-7.)  In denying Snipes' motion, the trial court did not allow him further time

9    to investigate potential witnesses and research evidence, resulting in the loss of potential defenses.

10   (*Id*.)  Snipes further contends the trial court erroneously prohibited him from augmenting his moving

11   papers or arguing in support of his motion, instead holding him to the four corners of his motion,

12   thereby violating his constitutional rights.  (*Id.* at 6.)  According to Snipes, the denial of a continuance

13   was tantamount to a denial of counsel.  (*Id*. at 7.)

14           Respondent argues the record shows the trial court did not act arbitrarily in denying Snipes'

15   motion for a continuance.  Rather, Snipes did not establish good cause for a continuance or that he had

16   exercised due diligence in his trial preparation.  (Mem. Supp. Answer at 10.)  In addition, Respondent

17   contends that the trial court did not violate Snipes' constitutional rights when it held him to the four

18   corners of his motion and refused to allow him to argue in favor of the motion, stating that the United

19   States Supreme Court has never recognized such a right.  (*Id.*)  Finally, Snipes suffered no prejudice

20   from the denial because on December 1, 2003, the trial court continued the trial to December 8, 2003,

21   giving Snipes' additional days to interview witnesses with his new investigator, citing *Brecht v.*

22   *Abrahamson*, 507 U.S. 619, 637-38 (1993).  (*Id.*)

23           The United States Supreme Court has held that "broad discretion must be granted trial courts

24   on matters of continuances; only unreasoning and arbitrary 'insistence upon expeditiousness in the

25   face of a justifiable request for delay' violates the right to assistance of counsel."  *Morris v. Slappy*,

26   461 U.S. 1, 11 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

27   //

28   //

Almost four months after Snipes was charged, he filed a motion for continuance on October 22, 2003, requesting the court move the trial date from December 1, 2003, to "mid-January (15th or so) 2004" because he claimed his experts were not ready, reciprocal discovery could not be met by November 1, 2003, and his private investigator was running out of approved hours for investigation. (Lodgment No. 1 at 1, 876, 1515.)  On November 10, 2003, the court considered Snipes' motion. (Lodgment No. 17, vol. 5 at 379.)  The court noted that Snipes had previously agreed to the December 1, 2003, trial date and that "the moving papers do not present sufficient support for a finding that you have exercised due diligence in your preparation to this date.  The moving papers do not present sufficient support for a finding that the additional time will produce any material information helpful to the defense."  (*Id*.)  The court then denied Snipes's motion, and confirmed the trial date.  (*Id*.)

Under California law, a party seeking to continue a criminal trial must provide the court with written notice "together with affidavits or declarations detailing specific facts showing that a continuance is necessary." Cal. Penal Code § 1050(b).  A party may make a motion to continue a trial without meeting these requirements but must show good cause for the failure.  *Id*.  The court must hold a hearing to determine whether there is good cause for the defendant's failure to comply.  *Id*.

Here, Snipes summarily stated that he needed a continuance because his investigator could not be ready by mid-December, "possibly early December 2003 pushing it"; expert Dr. Joseph Yedid needed to do more testing, but could be ready by December 1, 2003; the defense had not located a trauma expert; an accident reconstruction expert would probably be located within a few days and would be ready on December 1, 2003; and the police expert had requested numerous items that he had not received. (Lodgment No. 1, vol. 4 at 881-82.)  Snipes provided no affidavits or declarations from any of these parties, thereby failing to meet the requirements of Penal Code section 1050(b).  Cal. Penal Code § 1050(b).

In addition, Snipes asked if he could add anything to his motion, to which the court responded that the law required Snipes include support for his request in the moving papers and that "no hearing is allowed on that issue unless I think it is necessary to supplement or clarify, and I don't think that that is required where the motion is totally devoid of the support that I was looking for in order to grant your motion."  (*Id*. at 380.)  The court denied the motion with prejudice stating Snipes failed to

1    demonstrate any facts that suggested a continuance was appropriate.  (*Id.*)

2           Whether a trial court has abused its discretion in denying a continuance motion is "found in

3    the circumstances present in every case, particularly in the reasons presented to the trial judge at the

4    time the request is denied."  *Ungar*, 376 U.S. at 589.   The trial court did not violate Snipes' Sixth

5    Amendment right to counsel by denying his motion because Snipes had notice of the trial date and

6    many months to prepare with the assistance of a private investigator, and did not support his motion

7    with affidavits or declarations as required under Penal Code section 1050(b), instead relying on bare

8    assertions.   The court stated sufficient reasons to support its denial of the continuance motion by

9    stating that there was nothing in the motion to suggest Snipes had been diligent or that a continuance

10   would aid the defense in any way.   The court's discretion to deny the motion was within the purview

11   of a trial court, and accordingly, the denial of Snipes motion for a continuance did not impinge his

12   federal constitutional right.  *See  Morris*, 461 U.S. at 11.

13          Morever, even if the trial court's denial of his motion was in error, the error was harmless .

14   Despite the earlier denial, Snipes renewed his motion on December 1, 2003, after which the court

15   approved additional hours for investigation and gave Snipes five more days to prepare, stating that no

16   witnesses would be called until Monday, December 8, 2003, in essence granting Snipes' motion.  *See*

17   *Brecht*, 507 U.S. 619, 637-38 (1993).   Therefore, Snipes suffered no harm vis a vis the trial court's

18   denial of his motion.   In light of the above, the Court recommends that claim two be **DENIED**.

19                          **Denial of Counsel (Claim 3)**

20          In the portion of claim three which Respondent claims is procedurally barred, Snipes contends

21   his Sixth Amendment right to counsel was violated because the trial court infringed his right to self-

22   representation by delegating important legal powers to the private investigator which belonged to him,

23   and the trial court denied Snipes's formal request for counsel.[3]  (Mem. Supp. FAP at 6-12.)

24          Respondent counters that Snipes was not denied his right to self-representation because he was

25   allowed to present his case as required under *McKaskle v. Wiggins*, 465 U.S. 465 U.S. 168, 174

26   (1984).  (Mem. P&A Supp. Answer at 30.)   Further, Respondent argues that Snipes' claim that his

27

28

---

[3]The portion of claim three which is not procedurally barred is addressed in section IV, B, 2 of this
Order.

1    investigator provided inadequate legal performance was properly denied by the California Court of

2    Appeal on state habeas because there is no Supreme Court authority guaranteeing a non-capital

3    *Faretta*[4] defendant the right to an investigator, "let alone competent legal assistance from an

4    investigator." (*Id.*) Finally, Respondent argues that the trial court did not violate Snipes' right to

5    counsel when it denied his request for counsel made late in the trial, because the request was untimely

6    and made for purposes of delay. (*Id.* at 13.)

7                                            *Self- Representation*

8              A criminal defendant is guaranteed the right to self-representation under the Sixth Amendment.

9    *Faretta v. California*, 422 U.S. at 819-20 (1975). A "*pro se* defendant must be allowed to control the

10   organization and content of his own defense, to make motions, to argue points of law, to participate

11   in voir dire, to question witnesses, and to address the court and jury at appropriate points in the trial.

12   *McKaskle*, 465 U.S. at 174 (italics in original).

13             Snipes argues that his right to self representation was violated because the trial court gave the

14   private investigator complete control to decide which prospective witnesses were relevant and

15   material, allowed the investigator to participate in off-the-record discussion with counsel and the

16   court, and ordered Snipes to rely on legal advice from the investigator concerning what evidence was

17   discoverable. (Mem. P&A Supp. FAP at 11.) Snipes specifically argues that the investigator

18   improperly gave the prosecution the file of expert Dr. Kalish, which contained trial strategy, over his

19   objection. (*Id.* at 12.) The record demonstrates that Snipes contentions are erroneous.

20             On December 1, 2003, Snipes' private investigator, John Edwards Ballard ("Ballard") was

21   present during hearings concerning the proposed witness lists of each party. (Lodgment No. 17, vol.

22   6 at 504-06) The trial court noted that Ballard had been participating appropriately in off-the-record

23   discussions concerning witnesses, and advised Ballard that Snipes was not to call any witnesses unless

24   they were properly investigated. (*Id.* at 504.) Ballard was told that the number of subpoenas he would

25   ultimately serve would probably be less than the sixty Snipes suggested, because the court was "going

26   to make a decision that there's a basis for having them testify, [and] they should testify. If it's only

27   to see what they have to say, there is no basis for having them testify." (*Id.* at 505.) As the record

28   _____

              [4]*Faretta v. California*, 422 U.S. 806 (1975).

1   demonstrates, the court did not instruct the investigator to make decisions regarding which witnesses

2   should testify, nor did it allow the investigator to improperly participate in off-the-record discussion,

3   therefore Snipes is not entitled to relief on this claim.

4          Further, Ballard did not improperly hand over Dr. Kalish's file to the prosecution.  Dr. Kalish

5   was a psychiatrist who the defense called as an expert witness to testify regarding Snipes' fear-based

6   defense.  (*Id.* at 792-807.)  The trial court directed Dr. Kalish to speak with Ballard and Snipes to be

7   certain that anything discoverable was passed on to the prosecution.  (*Id.* at 817.)  In turning over Dr.

8   Kalish's file to the prosecution, Ballard was following a court order, rather than usurping Snipes'

9   authority over his case, as Snipes contends.[5]

10                          *Request for Appointment of Counsel*

11         Snipes argues that  the court improperly denied his informal request for counsel because it did

12  not conduct an inquiry on the record before denying his request as required under *United States v.*

13  *Prime*, 431 F.3d 1147, 1154 (9th Cir. 2004), *Daniels v. Woodford* 428 F.3d 1181, 1200 (9th Cir.

14  2005), *United States v. Siordia-Felix* 97 F.3d 1463 (9th Cir. 1996) and *United States v. Lillie* 989 F.2d

15  1054, 1056 (9th Cir. 1993).  (Mem. P&A Supp. FAP at 14.)  Snipes further contends that his Sixth

16  Amendment right to counsel was violated because of the trial judge's unreasonable and arbitrary

17  reliance on expeditiousness in denying his claim in violation of *Gideon v. Wainright*, 372 U.S. 335

18  (1963), *Morris v. Slappy*, 461 U.S. 1 (1983), and *Ungar v. Sarfite*, 376 U.S. 575, 589 (1964).  (*Id.*)

19  He claims that he referred to his right to renounce self-representation and request counsel as a

20  "weapon" to combat the bias and prejudice of the judge and prosecution in "forcing [him] into a

21  premature trial", not as a tactic to delay trial.   (*Id.*)

22         Respondent contends that the trial court properly denied Snipes' informal request for counsel

23  _____

24         [5] In support of his assertion that the trial court ordered him to produce Dr. Kalish's file or lose him
    as a witness forever, Snipes cites the Reporter's Transcript at 1222-23, 1232.  (Mem. P&A Supp. FAP at

25  12.)  However, the cited portion of the record concerns Dr. Vomhof, a defense witness who was scheduled
    to testify as to Snipes' intoxication and accident reconstruction.  (*Id.* at 1223.)  During trial, Dr. Vomhof was

26  called as a witness and the prosecution expressed concern that it had not received additional investigation
    information concerning the witness, however, the parties agreed to allow the prosecution to review the

27  evidence with Dr. Vomhof over the lunch hour to make a determination as to whether the prosecution could
    go forward.  (*Id.* at 1222-23, 1232.)  In light of the court's lenience in allowing Dr. Vomhof to disclose the

28  information to the prosecution over lunch, it is clear Snipes did not lose this witness or suffer other
    prejudice for the investigator's failure to make this discovery available to the prosecution, if that is what
    Snipes is alleging.  *See generally Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005).

1  because it was untimely and made for the purpose of delay, and he had demonstrated that he could

2  capably represent himself.  (Mem. P&A Supp. Answer at 13.)

3      The right to counsel is no longer absolute once a criminal defendant makes a knowing and

4  intelligent waiver of the right.  *Menefield v. Borg*, 881 F.2d 696, 700 (9th Cir. 1989).  Indeed, "[t]here

5  are times when the criminal justice system would be poorly served by allowing the defendant to

6  reverse his course at the last minute and insist upon representation by counsel."  *Id.* (citing *United*

7  *States v. Studley*, 783 F.2d 934, 938 (9th Cir. 1986);*United States v. Leavitt*, 608 F.2d 1290, 1293 (9th

8  Cir. 1979).  A request made for purposes of delay on the eve of trial may properly be denied.

9  *Menefield*, 881 F.2d at 700.

10      On December 2, 2003, Snipes stated  "I have one weapon used, you know, in case I believe

11  that this Court, you know, is doing anything that I believe would take me into an unfair trial; and, that

12  would be to renounce self-representations and demand counsel.  And I'll utilize that weapon at any

13  time when I feel that I would not be given a fair hand."  (Lodgment No. 17, vol. 6 at 682-83.)  The

14  trial court had already advised Snipes that "[W]e're trying to give you a fair trial here. . .  I will

15  accommodate your legitimate concerns, but a deliberate attempt to try to hold off this trial, a deliberate

16  process of delaying, a subterfuge of 'I can't come to trial for these reasons' is not going to work.  ¶

17  The trial will proceed unless there's a real good reason for not doing it." (*Id.*)  The court told Snipes

18  that a request for an attorney is reviewed as to whether it is timely, and that "there's a point in time

19  where renouncing your self-representation and requesting a lawyer can happen too late, so that the

20  motion would be denied for that reason."  (*Id.* at 683.)  The prosecutor opined that this was not a

21  genuine request for counsel, but a tactic for delay.  (*Id.*)  The court reminded Snipes that he had been

22  given additional days to investigate potential witnesses but that it would not tolerate anything done

23  for purposes of delay.  (*Id.* at 684.)

24      On December 11, 2003, Snipes made a request for counsel during the defense case.

25  (Lodgment No. 17, vol. 9 at 1305.)  The court denied the request stating:

26  //

27  //

28

1

2

3

4

5

6

7

8

Your request to give up your right to self-representation and have counsel reappointed is denied on several grounds: ¶ It is made during the course of trial. The jury has already been selected. We have already started receiving testimony of several witnesses. The People have already rested. It is untimely for that reason. ¶ My belief is that the reason for your request is to delay this trial improperly. As you've told me in the previous hearing, asking for an attorney was your last weapon to stop this trial; and, I believe that I have now been the target of your last weapon, as you describe. ¶ You are sufficiently streetwise and courtwise to have represented yourself to this point. You brought multiple motions. . . And you have made a variety of arguments on all aspects of this case relying on a wide scope of authorities. ¶ You know how to have matters addressed by the trial court. I've seen you do that. And the appellate court. I've seen you do that. ¶ So it appears that you do have the skills needed to represent yourself at this point. ¶ So for all of those reasons individually and collectively, your motion to have a counsel reappointed and to waive your right of self-representation is denied.

9    (*Id*. at 1306-07.)

10    Snipes has failed to show that his right to counsel was violated by the trial court's denial of

11   his late request. On the contrary, the trial court adequately demonstrated on the record that Snipes was

12   fully capable of self-representation and noted that Snipes previously warned he would use a request

13   for counsel as a way to delay trial, which it appeared he was doing. Further, granting Snipes' motion

14   would have required a continuance of the trial to afford time to appoint Snipes counsel, despite the

15   trial being well underway. It has long been held that a court may "constitutionally deny a continuance

16   even when that denial results in the defendant's being unrepresented at trial. Usually this occurs when

17   the defendant engages in a course of conduct which is dilatory and hinders the efficient administration

18   of justice." *U.S. v. Leavitt*, 608 F.2d 1290, 1293 (9th Cir. 1979); *see also Ungar*, 376 U.S. at 589

19   (1964). As the Ninth Circuit in *Menefield* held, a trial court may properly deny a request for a

20   continuance made for purposes of delay, considering factors including whether the continuance would

21   impact witnesses, counsel, and the court adversely; whether other continuances had been previously

22   been granted; whether legitimate reasons exist for the delay; and whether the delay is the defendant's

23   fault or would prejudice the defendant. 881 F.2d at 700. Snipes' request came after the jury was

24   empaneled, the prosecution had rested, and many witnesses had already testified. In addition, the trial

25   court granted an earlier request for additional time to investigate and subpoena witnesses. The trial

26   court was within it discretion to weigh these factors, as well as Snipes' ability to represent himself,

27   and properly denied Snipes' request for counsel.

28   //

The cases upon which Snipes relies provide no support for his contention that the trial court erred in denying his request for counsel.  In *Prime*, the defendant moved to substitute counsel and continue the trial on the morning of trial.  431 F.3d at 1154-55.  The appellate court held that a three part inquiry must be undertaken on review which includes the timeliness of the motion, the adequacy of the district court's inquiry  and whether the asserted conflict was so significant as to result in a complete breakdown in communication.  *Id.*  Here, Snipes moved for counsel late in the trial.  Granting the motion would have effectively stopped the trial until counsel was appointed and could adequately move forward. Such a delay was not in the interests of judicial efficiency, as it would significantly inconvenience the jury, prosecution, witnesses and court to reconvene at a later time. The trial court noted these factors, in addition to Snipes' proficiency in self-representation, in its inquiry determining whether to grant or deny the motion.[6]  The trial court's inquiry was, therefore, adequate.  Further, the trial court did not unreasonably and arbitrarily rely on timeliness as the sole reason for its denial of his request, therefore, Snipes' argument that *Gideon* was violated for this reason is unavailing.  *See Ungar*, 376 U.S. at 589-90.

The remaining cases upon which Snipes relies stand for the same or similar proposition and because the trial court conducted an adequate inquiry, stated the reasons for its denial on the record, and relied on other factors in addition to the untimeliness of Snipes' motion, they do not support his claim.  *See Daniels*, 428 F.3d at 1200 (trial court in capital case did not conduct adequate inquiry into conflict between defendant and appointed counsel before denying motion for appointment of counsel); *Siordia-Felix*, 97 F.3d at 1463 (district court's denial of substitute counsel without adequate inquiry was error); *Lillie*, 989 F.2d at 1054 (denial of motion to substitute counsel on eve of trial based solely on untimeliness was error) (overruled by *U.S. v. Garrett*, 179 F.3d 1143 (9th Cir. 1999).) Accordingly, Snipes is not entitled to relief on this claim and the Court recommends that claim three be **DENIED**.

//

//

---

[6]Because Snipes was not moving to substitute counsel, the trial court clearly did not need to conduct the third prong of the inquiry regarding conflict between counsel and defendant. *See Prime* 431 F.3d at 1154-55.

1   //

2   **Denial of Access (Claim 4)**

3        Snipes argues in Claim Four that his Sixth and Fourteenth Amendment rights were violated

4   when the trial court: (1) denied his request for a dolly, cart or other assistance in moving his five case-

5   file boxes to and from the court (FAP at 13-14; Mem. P&A Supp. FAP at 15-16); (2)  denied him

6   access to direct dial phones located in the law library during trial (FAP at 14); (3) denied him access

7   to the law library during trial (FAP at 15; Mem. P&A Supp. FAP at 16-17); and (4) denied him access

8   to his DVDs and audiotapes until late in his case-in-chief, except for one opportunity he had earlier

9   to hear the tapes (FAP at 16; Mem. P&A Supp. FAP at 18.)  According to Snipes, the denial of access

10  to his files and evidence violated his right to self-representation.  (FAP at 13.)

11       According to Respondent, the record demonstrates that Petitioner had sufficient access to his

12  files, audiotapes, DVDs, witnesses and legal resources to mount a complete defense which included

13  expert witnesses and jury instructions.   (Mem. P&A Supp. Answer at 14-15.)   Furthermore,

14  Respondent contends that even if the trial court denied Snipes access, the error was harmless because

15  it did not have a "substantial and injurious effect or influence in determining" the jury's verdict, citing

16  *Brecht*, 507 U.S. at 673-38.  (*Id.* at 15.)

17       Under *Faretta*, the State is not required to provide any specific legal aid to a pro se criminal

18  defendant.  *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (citing *Faretta*, 422 U.S. at 10).  The Ninth

19  Circuit has recognized that "a pro se defendant's right of 'some access' to resources to aid the

20  preparation of his defense . . . [must] be balanced against security considerations and the limitations

21  of the penal system." *United States v. Robinson*, 913 F.2d 712, 717 (9th Cir. 1990) (citing *Milton v.*

22  *Morris*, 767 F.2d 1443, 1447 (9th Cir. 1985) ("[t]he rights to notice, confrontation, and compulsory

23  process [recognized in *Faretta*] mean, at a minimum, that time to prepare and some access to materials

24  and witnesses are fundamental to a meaningful right of self representation").

25       The record is clear that the trial court did not withhold the access to which Snipes was entitled

26  under federal law and, in fact,  provided Snipes with as much assistance in the  preparation of his

27  defense as it was able.  On June 26, 2003, the trial court appointed an investigator and legal runner

28  to assist Snipes.  (Lodgment No. 1, vol. 7 at 1515.)  Snipes filed a motion requesting a cart to move

1    his case files to and from court on September 24, 2003.  (Lodgment No. 1, vol. 3 at 535.)  During the

2    pre-trial hearing on Snipes' motion, the court told Snipes that he could take as many files as he could

3    carry, and that the appropriate way to obtain a cart was to request it through his investigator, as the

4    court did not have a cart it could give to Snipes.  (Lodgment No. 17, vol. 6 at 593-94, 676-77.)  When

5    Snipes complained that he could not move the boxes out of the court without assistance due to a back

6    injury, the court offered to store the files Snipes did not need.  (*Id*.)  Rather than denying access to his

7    case files, the court advised Snipes of the way to obtain assistance in moving them, and in the

8    alternative, it offered to store the case files so that he would not need to move them out of the court

9    when the trial was not in session.  The court did not violate Snipes' right of self-representation, but

10   instead appropriately ensured Snipes' right of "some access" to his files in this manner.  *See  United*

11   *States v. Robinson*, 913 F.2d at 717.

12       Similarly, the trial court did not violate Petitioner's right to law library access, including the

13   use of direct dial phones in the library, during trial.  (FAP at 14-16; Mem. P&A Supp. FAP at 16-17.)

14   The United States Supreme Court in *Faretta*, 907 F.2d at 835,  determined that "[w]hen an accused

15   manages his own defense, he relinquishes, as a purely factual matter, many of the benefits associated

16   with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly

17   and intelligently' forego those relinquished benefits."  *Id.*  The Ninth Circuit has established that the

18   right to self-representation does not also include a right to conduct legal research.  *United States v.*

19   *Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982).  Because Snipes 'knowingly and intelligently' waived

20   his right to counsel, he also relinquished the benefit of law library access, and therefore, he is not

21   entitled to relief on this claim.

22       In regard to telephone access during trial, Snipes contends that a criminal defendant's right to

23   phone calls is federally protected, citing *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) and

24   *Strandberg  v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1983).  (Mem. P&A Supp. FAP at 17.)  The

25   Ninth Circuit in *Keenan* and *Strandberg* recognized that detainees and prisoners have a *First*

26   *Amendment* right to telephone access that is subject to "reasonable security limitations."  *See Keenan*,

27   83 F.3d at 1092; *Strandberg*, 791 F.2d at 747 (emphasis added).  However, Petitioner does not argue

28   that his rights were violated under the First Amendment, therefore the cases he cites do not support

1    his claim.  Instead, Snipes argues that his Sixth Amendment right to self-representation was violated

2    by the court allegedly denying him access to phones.  Snipes does not point to, nor has the Court

3    found, any support for his claim that a criminal defendant is guaranteed a right to phone access during

4    trial.  As with Snipes' claim regarding law library access, his knowing and intelligent waiver of

5    counsel also waived many of the attendant benefits of having counsel, including ready access to

6    telephones.  *See Faretta*, *supra* 422 U.S. at 835.  For this reason, Snipes is not entitled to relief on this

7    claim.

8         Finally, Snipes does not provide sufficient support for his claim that the trial court denied his

9    right to access his audio tapes and DVDs[7].  As noted above, a criminal defendant has a right to "some

10   access" to resources to aid in his defense, however this right must be balanced against the limitations

11   of the penal system.  *Robinson*, 913 F.2d at 717.  According to Snipes, the  audio tapes of 911 calls

12   and witness interviews were stored by jail rules in the jail's law library.  (Mem. P&A Supp. FAP at

13   18.)  He complained to the court on December 2, 2003, that he was having a problem getting those

14   tapes from the jail.  (Lodgment No. 17,  vol. 6 at 677.)  The court instructed him to request the tapes

15   from the jail again.  (*Id*.)  On December 11, 2003, Snipes again stated that he had not been given

16   access to the tapes by the jail, but that he had been able to obtain copies from other sources and had

17   given the prosecution copies.  (Lodgment No. 17, vol. 9 at 1166-67.)

18        To the extent Snipes is arguing that he was denied access to the law library, and therefore, to

19   his audio tapes, his argument fails under *Faretta*, 422 U.S. at 836.  Insofar as Snipes claims that the

20   trial court did not allow him access to legal materials or evidence in preparation for his defense,

21   Snipes freely admits that he was able to review the audio tapes in the library on one occasion, and that

22   he ultimately received them and delivered them to the prosecution.  The record demonstrates that the

23   trial court did not deny Snipes necessary access to his case files, evidence, witnesses, and legal

24   resources, and Snipes has introduced no new evidence to the contrary.  Despite any delay that he may

25   have experienced in obtaining the audio tapes, he was able to present various theories of defense

26   including mistake, duress, intoxication, excessive force and self-defense, and make requests for

27

28

---

[7]Snipes does not develop his claim concerning the DVDs, other than to assert he was
denied access to them.

several CALJIC instructions in support of these defenses.  (Lodgment No. 17, vol. 5 at 10 at 1435, 1438; Lodgment No. 17, vol. 11 at 1452).  As the record demonstrates, Snipes was also able to present the testimony of Cindy Sue Alvarez who described "Steve," the friend who allegedly picked Snipes up in the stolen truck in support of his ignorance/mistake of fact defense (*id*. at 1229), testimony of several experts including Dr. Daniel Vomhof, an accident reconstruction expert, (*id*. at 1329), Dr. Mark Kalish, a forensic psychiatrist (*id*. at 1241),  Dr. Richard Frey, the trauma surgeon who treated Snipes after the accident in support of his intoxication defense,  (*id*. at 1316), and San Diego Police Officers Nygaard and Thomas who arrived at the Taco Bell parking lot after Officer Bassett in support of his defenses of duress and self-defense.  (*Id*. at 1117, 1137.)  Even had the trial court erroneously denied Snipes access as he contends, the alleged error did not have a "substantial and injurious effect or influence in determining" the jury's verdict as he was still able to mount a substantial defense as noted above.  *See Brecht*, 507 U.S. at 637-38.  In light of the above, the court recommends that this claim be **DENIED**.

### Improper Inducement to Testify (Claim 9)

Snipes argues in claim nine that his constitutional rights were violated because he was forced to testify on his own behalf.  (FAP at 22.)  In specific, Snipes contends that the trial court improperly told him that he would be required to support any allegations he made in his opening statement, including those which required he testify as to personal knowledge, or risk the prosecution attacking him for his failure to support his contentions during closing argument.  (*Id.*)  Snipes also claims that the trial court wrongfully ordered him to testify as to defenses of excessive force by police and voluntary intoxication if he expected to rely upon them.  (Mem. P&A Supp. FAP at 31.)  In addition, Snipes contends that the trial court's conduct reflected bias and prejudice which rises to the level of structural error.  (*Id*.)

Respondent counters that the trial court did not improperly compel Snipes to testify.  (Mem. P&A Supp. Answer at 24-25.)  Rather, the court correctly advised Snipes that the nature of the fear-based defenses he chose to pursue required that he testify as to his mental state in order to show the relevance and admissibility of proposed expert testimony and to lend support to the relevant defense jury instructions.  (*Id.* at 24-25.)

-26-

1   //

2        The central purpose of the Fifth Amendment's privilege is to "protect the defendant from being

3   compelled to testify against himself at his own trial." *Jenkins v. Anderson*, 447 U.S. 231, 242 (1980).

4   However, "[i]t is well settled that the government need not make the exercise of the Fifth Amendment

5   privilege cost free." *McKune v. Lile*, 536 U.S. 24, 41 (2002) (citing *Jenkins*, 447 U.S. at 238; *Williams*

6   *v. Florida*, 399 U.S. 78, 84-85 (1970) (a criminal defendant may be compelled to disclose the

7   substance of an alibi defense prior to trial or be barred from asserting it)).

8        The trial court did not compel Snipes to testify on his own behalf in violation of his Fifth

9   Amendment rights.  During in limine hearings on November 10, 2003, the trial court informed Snipes

10   that he would need to testify about his perceptions if he was going to rely on a fear based defense.  The

11   court stated:

12        I am focusing now on one of your defenses, which is you left Taco Bell
because you were afraid of the police.  One reason you were afraid of the police was,

13   as you contend, your prior contact with the police.  ¶  In order for that defense to be
relevant, there has to be evidence that you identified them as police.  Otherwise you

14   would be fleeing from unknown assailants, and the fact that they were police or not
would have nothing to do with why you left.

15

16   (Lodgment No. 17, vol. 5 at 390.)

17        On December 2, 2003, the trial court further addressed the defense of fear and appropriate jury

18   instructions, informing Snipes that the court would instruct the jury on the defense if Snipes presented

19   evidence that a reasonable person would react as Snipes did, and that the flight was the result of fear

20   and no other reason.  (Lodgment No. 17, vol. 6 at 623-34.)  The court properly noted that Snipes had

21   not yet provided enough evidence to support the defense, but that should he testify that he departed

22   because he was in fear, the court would hold 402 hearings for any relevant witnesses and would

23   consider Snipes' testimony and the hearings to determine whether there was sufficient support for the

24   defense and attendant jury instruction.  (*Id.* at 633-37); *See* Cal. Evid. Code 350 (only relevant

25   evidence is admissible); *Wood v. State of Alaska*, 957 F.2d 1544, 1549 (9th Cir. 1992) ("A defendant

26   has no right . . . to present irrelevant evidence").  The trial court noted that "I am basing the decisions

27   that I make from this point forward on your representation to me that you are going to testify."  (*Id.*

28   at 635.)  To which Snipes answered, "[i]t's guaranteed."  (*Id.*)

1   //

2       Despite his affirmative decision to testify, as demonstrated in the record, Snipes vigorously

3   argues that the trial court forced him to testify or risk losing the witnesses he planned to use to prove

4   circumstantially that he was in fear.  However, the trial court could not determine whether the

5   witnesses were competent and relevant until the fear-based defense was raised through Snipes'

6   testimony, forcing Snipes to choose between testifying or not.  The dilemma facing a defendant which

7   requires that he choose "between complete silence and presenting a defense has never been thought

8   an invasion of the privilege against compelled self-incrimination." *Williams v. Florida*, 399 U.S. 78

9   at 84 (1970).  Snipes was not forced to testify, but instead chose to testify as "a strategic choice to

10  maximize his chances of success at trial."  *United States v. Wagner*, 834 F.2d 1474, 1483 (9th Cir.

11  1987).

12      In addition, the trial court properly advised Snipes that there are consequences that follow from

13  a party making a claim during opening statements which is not later proved up, and that the court

14  would let the jury "decide what those are."  (Lodgment No. 17, vol. 5 at 404); *see People v. Harris*,

15  47 Cal.3d 1047, 1085 n.19, 767 P.2d 619, 643, 255 Cal.Rptr. 352, 376 (1989) (prosecutor may

16  properly "refer in closing argument to defense counsel's opening statement and to note the failure of

17  the defense to 'deliver' by presenting evidence to support the outline he had drawn of the defendant's

18  case.")  Snipes contends that the court's statement forced him to testify.  However, the court's

19  advisement did not run afoul of the Fifth Amendment's proscription against compulsory self-

20  incrimination but was again an instance of Snipes making a strategic choice to include certain defenses

21  which required that he testify.  There was no coercion, bias or prejudice reflected in the trial court's

22  conduct, accordingly the court recommends that this claim be **DENIED**.

### Omission of Defense Jury Instructions (Claims 10, 11)

24      Snipes argues in claim ten that the trial court violated his constitutional rights by failing to

25  instruct the jury on self-defense sua sponte, refusing to instruct on duress and accident, and by limiting

26  the instruction on mistake of fact, CALJIC No. 4.35.  (FAP at 22; Mem. P&A Supp. FAP at 33-35.)

27  In claim eleven, Snipes claims that the trial court violated his Sixth and Fourteenth Amendment rights

28  by failing to instruct the jury on third party culpability with CALJIC No. 2.11.5 because there was

1   sufficient testimonial evidence that the owner left his keys in the truck, and Snipes testified that his

2   friend "Steve" picked him up in the truck which supported the inference that "Steve" stole the truck.

3   (Mem. P&A Supp. FAP 36.)

4       Respondent contends that the trial court did not violate Snipes' due process rights by

5   excluding some instructions, and limiting others because there was not sufficient evidence to support

6   the excluded instructions, and the exclusion of the language Snipes sought to add to CALJIC No. 4.35

7   did not render the trial fundamentally unfair, citing *United States v. Parker*, 991 F.2d 1493, 1497 (9th

8   Cir. 1993). (Mem. P&A Supp. Answer at 26.)

9       An ailing jury instruction constitutes a violation of due process only when the instruction, on

10  its own, infects the trial to such an extent that the resulting conviction violates due process. *Estelle*

11  *v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughton*, 414 U.S. 141, 147 (1973)). In

12  addition, "[f]ailure to instruct on the defense theory of the case is reversible error if the theory is

13  legally sound and evidence in the case makes it applicable." *Beardslee v. Woodford*, 358 F.3d 560,

14  577 (9th Cir. 2004). The petitioner has an "especially heavy" burden where the trial court allegedly

15  failed to give an instruction because "[a]n omission, or an incomplete instruction, is less likely to be

16  prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

17  **CALJIC Nos. 4.40 [Duress - - Threats and Menaces] and 4.45 [Accident and Misfortune]**

18      Snipes complains that the trial court improperly refused to give the instructions on duress,

19  CALJIC No. 4.40[8], and Accident, CALJIC No. 4.45[9]. (Mem P&A Supp. FAP at 35.) In so doing,

20  Snipes contends that the court eviscerated his defense that he mistakenly did not know the persons

21  approaching the vehicle were police officers. (*Id.*) Respondent counters that CALJIC Nos. 9.26 and

22  _____

23      [8]CALJIC No. 4.40 states: "A person is not guilty of a crime [other than _____] when [he][she]

24  engages in conduct, otherwise criminal, when acting under threats and menaces under the following
    circumstances:

25      1.    Where the threats and menaces are such that they would cause a reasonable person to fear
    that [his][her] life would be in immediate danger if [he][she] did not engage in the conduct charged, and

26      2.    If this person then actually believed that [his][her] life was so endangered.
        This rule does not apply to threats, menaces, and fear of future danger to [his][her] life, [nor does it

27  apply to the crime[s] of ___ (crime punishable by death) ____. (CALJIC 4.40.)

28      [9]CALJIC No. 4.45 provides: "When a person commits an act or makes an omission through
    misfortune or by accident under circumstances that show [no][neither][criminal intent [n]or purpose,] [nor]
    [[criminal] negligence,] [he] [she] does not thereby commit a crime. (CALJIC 4.45.)

1   9.28 covered the concept that Snipes' conduct was justified by the police officers' conduct, therefore

2   the omission did not violate Snipes' due process rights.  (Mem. P&A Supp. Answer at 26-27.)

3        On December 15, 2003, the trial court addressed Snipes proposed instructions and declined

4   to give the duress instruction, CALJIC No. 4.40, stating "[CALJIC Nos.] 9.26 and 9.28 and 5.30 are

5   the body of instructions you requested and I am giving.  They deal with duress or menace that a police

6   officer presents.  ¶  The instruction 4.40 does not apply to a police officer involved situation."

7   (Lodgment No. 17, vol. 11 at 1450.)  Snipes argued that the proposed instructions did not cover the

8   fact that he did not know they were police officers, to which the court responded, " [t]hat instruction

9   does not relate to what you knew, it relates to what they were doing.  Those three people who

10  approached you."  (*Id.*)

11       Snipes complains that in denying his request for these jury instructions, the court forced him

12  to rely on excessive force rather than duress or mistake as a defense.  (Mem. P&A Supp. FAP at 35.)

13  However, the concept underlying Snipes' duress defense was that he believed the officers were

14  threatening him and so he fled, which is sufficiently covered in CALJIC No. 9.26, making CALJIC

15  No. 4.40 [Duress] unnecessary.  Further, Snipes argued during trial that CALJIC No. 4.45 was

16  necessary to support his defense that during flight from unknown assailants an accident occurred in

17  which the truck hit a wall.  (Lodgment No. 17, vol. 11 at 1451.)  The trial court explained that

18  "accident", as contemplated in CALJIC No. 4.45 does not refer to an automobile accident, but to

19  conduct that occurs due to "accident or misfortune."  (*Id.*)  The court concluded that because Snipes

20  flight from assailants was intentional, an instruction on accident or misfortune was not applicable.[10]

21  _____

22       [10]The court then instructed the jury with CALJIC Nos. 9.26 [Arrest or Detention - - Use of
     Reasonable Force - - Duty to Submit] and 9.28 [Use of Excessive Force] as follows:
23  CALJIC No. 9.26;

24       A peace officer who is making a detention may use reasonable force to make the
     detention, or to prevent escape, or to overcome resistance.  ¶ The officer need not retreat or
25  desist from his or her efforts by reason of the resistance or threatened resistance of the
     person being detained.  ¶ Where a peace officer is making a detention and the person being
26  detained has knowledge, or by the exercise of reasonable care should have knowledge, that
     he is being detained by a peace officer, it is the duty of the person to refrain from using
27  force, flight, or any weapon to resist the detention unless unreasonable or excessive force is
     being used to make the detention.  ¶ However, if you find that the peace officer used
28  unreasonable or excessive force in making the detention, the person being detained has no
     duty to refrain from using reasonable force or flight to defend himself against the use of the

1    (*Id.*)  In addition, Snipes did not lose the defense of mistake of fact because the trial court instructed

2    the jury with CALJIC No. 4.35 [Mistake of Fact].  Snipes has not met his "heavy burden" to show that

3    the trial court's refusal to give CALJIC No. 4.40 and CALJIC No. 4.45 deprived him of a theory of

4    defense.  *See Beardslee v. Woodford*, 358 F.3d at 577.

5                                 **Sua Sponte Self-Defense Instruction**

6           Snipes argues that the court violated its duty to sua sponte instruct the jury on self-defense

7    citing *Martin v. Ohio*, 480 U.S. 228, 236 (1987).  (Mem P&A Supp. FAP at 34.)  Respondent counters

8    that the defense was inapplicable because Snipes was not charged with a crime involving real or

9    threatened physical contact with a victim.  (Mem. P&A Supp. Answer at 27.)

10   CALJIC No. 5.30 states:

11          It is lawful for a person who is being assaulted to defend [himself] [herself]
            from attack if, as a reasonable person, [he] [she] has grounds for believing and does
12          believe that bodily injury is about to be inflicted upon [him] [her]. In doing so, that
            person may use all force and means which [he] [she] believes to be reasonably
13          necessary and which would appear to a reasonable person, in the same or similar
            circumstances, to be necessary to prevent the injury which appears to be imminent.

14

15   (CALJIC No. 5.30.)

16          Nowhere in his petition does Snipes allege that he used force to prevent an imminent physical

17   injury.  Instead, Snipes claims because he did not recognize that it was police officers who approached

18   the truck, he thought he was under attack and his self-defense was to flee.  (Mem. P&A Supp. FAP

19   at 35.)  The record demonstrates that Officer Bassett approached the raised truck, saw Snipes in the

20   driver's seat, drew her weapon and demanded that Snipes raise his hands.  (Lodgment No. 17, vol. 8

21   at 1077-79.)  Snipes looked directly at Bassett, briefly raised his hands, then lowered them, and then

22   _____

23          excessive force.
     CALJIC No. 9.28;
24          A peace officer is not permitted to use unreasonable or excessive force in detaining or
            attempting to detain a person for questioning.  ¶ If an officer does use unreasonable or
25          excessive force in detaining or attempting to detain a person for questioning, the person
            being detained may lawfully use reasonable force and flight to protect himself.  ¶ Thus, if
26          you find that the officer used unreasonable or excessive force in making or attempting to
            make the detention in question, and that the defendant used only reasonable force or flight
27          to protect himself, the defendant is not guilty of the crime charged in Count 3.

28   (Lodgment No. 17, vol. 11 at 1472-73.)

1  started the truck. (*Id*.)  Bassett continued to approach the truck, reached in, and grabbed Snipes ball

2  cap because that was all she could reach.  (*Id*.)  Rather than using force to defend himself from what

3  he perceived to be an imminent threat, Snipes started the truck, and backed out of the parking lot,

4  therefore CALJIC No. 5.30 was not applicable.  Snipes' purported defense of flight from an imminent

5  threat is not covered under CALJIC No. 5.30 and he did not introduce sufficient evidence during trial

6  to support the theory of self-defense described in CALJIC No. 5.30.  Therefore, the court did not err

7  in failing to sua sponte give this instruction.

8  **CALJIC No. 2.11.5 [Unjoined Perpetrators of Same Crime]**

9  In claim eleven, Snipes asserts that the trial court erroneously rejected Snipes' request for

10  CALJIC 2.11.5[11] despite there being sufficient evidence to support the defense that "Steve" stole the

11  truck.  (Mem. P&A Supp. FAP at 36.)  Snipes argues there is a mandatory requirement that a trial

12  court give the instruction when requested, citing *People v. Cain* 10 Cal. 4th 1 (1995), *People v. Sully*,

13  53 Cal. 3d 1195 (1991), and *People v. Belmontes*, 45 Cal. 3d 744 (1988).  (*Id*.)  Respondent counters

14  that the trial court did not err in failing to give the instruction because there was not sufficient

15  evidence to support Snipes' request.  (Mem. P&A Supp. Answer at 27.)

16  Snipes requested CALJIC 2.11.5 in a written pretrial request for jury instructions on September

17  29, 2003.  (Lodgment No. 1, vol. 3 at 584.)  On December 15, 2003, outside the presence of the jury,

18  the trial court addressed Snipes' request.  The prosecution argued that the instruction "is typically

19  given upon the prosecution's request where . . . there's evidence that two people were involved in the

20  crime, only one of which is in trial currently.  I don't think it's going to be Mr. Snipes' position - - but

21  he could correct me if I'm wrong - - that, ah, he and Steve entered into a conspiracy to steal the car

22  and then Steven just happens not be charged here.  ¶  That's the purpose of that instruction.  It's not

23  so that it is argued as a foil by the person here saying, 'I didn't have knowledge the car was stolen;

24  and P.S., here's 2.11.5 that says there may be an unjoined perpetrator.'"  (Lodgment No. 17, vol. 11

25  _____

26  [11]CALJIC No. 2.11.5 states: "There has been evidence in this case indicating that a person other

27  than a defendant was or may have been involved in the crime for which that defendant is on trial.  ¶  There may be many reasons why that person is not here on trial.  Therefore, do not speculate or guess as to why the other person is not being prosecuted in this trial or whether [he] [she] has been or will be prosecuted.

28  Your [sole] duty is to decide whether the People have proved the guilt of [each] [the] defendant on trial." (CALJIC 2.11.5.)

1   at 1453.) Snipes countered that the instruction was supported by evidence that had been presented that

2   "a person other than the defendant was or may have been involved in a crime for which the defendant

3   is on trial." (*Id.*)  The trial court did not rule on Snipes' request, and did not give the instruction.

4         The underlying purpose of CALJIC No. 2.11.5 is "to discourage the jury from irrelevant

5   speculation about the prosecution's reasons for not jointly prosecuting all those shown by the evidence

6   to have participated in the perpetration of the charged offenses, and also discourage speculation about

7   the eventual fates of unjoined perpetrators." *People v. Cox*, 53 Cal.3d 618, 667, 280 Cal.Rptr. 692,

8   809 P.2d 351 (1991).  Snipes did not argue at trial, nor does he contend here, that he participated in

9   the theft of the vehicle with "Steve."  Instead, he has asserted that "Steve" stole the vehicle and did

10  not tell Snipes it had been stolen.  Because he has not alleged facts which support the defense that

11  "Steve" was an unjoined perpetrator, the trial court's failure to instruct on the defense theory was not

12  error because the theory was not legally sound and no evidence in the case made it applicable. *See*

13  *Beardslee*, 358 F.3d at 577.  Further, contrary to Snipes' assertion, there is no mandatory requirement

14  that a trial court give CALJIC No. 2.11.5 when requested by a defendant, and the cases upon which

15  he relies do not support this proposition. *See Cain*, 10 Cal.4th at 35 (trial court did not commit error

16  in homicide case when it gave CALJIC No. 2.11.5); *Sully*, 53 Cal.3d 1218-19 (no error in murder case

17  where trial court gave CALJIC No. 2.11.5); *Belmontes*, 45 Cal.3d 782-83 (jury could not have

18  misunderstood CALJIC No. 2.11.5 as given in light of other instructions, therefore no prejudice to

19  defendant in murder case.)  Snipes has not pled facts sufficient to support his claim that the trial court

20  erred in not giving CALJIC No. 2.11.5.

21                 **CALJIC No. 4.35** [Ignorance or Mistake of Fact]

22        Snipes contends that he suffered prejudice because the court wrongfully limited the use of

23  CALJIC 4.35 [Ignorance or Mistake of Fact] to Snipes' mistaken belief that the truck belonged to

24  "Steve" instead of allowing the instruction to also apply to his mistaken belief that he was being

25  followed by armed assailants.  (Mem. P&A Supp. FAP at 34.)  In a pretrial motion, Snipes requested

26  that the court add the following language to CALJIC 4.35:

27  //

28  //

1    //

2          Evidence has been placed before you that the defendant was ignorant of the fact
       that the vehicle was reported stolen, and evidence has been placed before you that the
3      defendant was ignorant of the fact that the persons rushing the vehicle in which he sat
       were in fact police officers.  Ignorance or mistake could if applied to the evidence - if
4      you elect to believe it - render the necessity to acquit on some or all of the counts
       charged.  Knowledge should also be a consideration, as if you except [sic] the defense
5      allegations and find that the evidence of the defense could just as easily be true when
       applied to the facts, as the People's contentions to the contrary.  You must acquit.

6

7    (Lodgment No. 1, vol. 3 at 587.)  During trial the court addressed Snipes' motion outside the presence

8    of the jury and stated that it would not add the language he requested "because it's argumentative and

9    not instructional." (Lodgment No. 17, vol. 11 at 1448.)  Snipes objected but the court denied the

10   modification.  (*Id.* at 1499.)  The prosecution objected to the instruction as unnecessary, to which the

11   court responded that it would give the instruction because it was supported by Snipes' allegation that

12   he "made a mistake in determining that Steve was the owner of the car - - or that Steve was authorized

13   by the owner of the car to be driving it."  (*Id.* at 1147.)

14        The trial court later instructed the jury with the standard version of CALJIC 4.35 as follows;

15   "[a]n act committed made in ignorance or by reason of a mistake of fact which disproves any criminal

16   intent is not a crime. ¶  Thus, a person is not guilty of a crime if he commits an act under an actual and

17   reasonable belief in the existence of certain facts and circumstances which, if true, would make the

18   act or omission lawful."  (Lodgment No. 17, vol. 11 at 1471.)  The court's refusal to include Snipes

19   proposed language was not error because argumentative instructions need not be given.  *See United*

20   *States v. Parker,* 991 F.2d 1493, 1497 (9th Cir. 1993).  Further, the instruction was given immediately

21   following CALJIC No. 12.87 [Definition of Distinctively Marked] and CALJIC No. 4.21 [Voluntary

22   Intoxication], and immediately prior to CALJIC No. 2.52 [Flight After Crime].  (*Id.* at 1470-71.)

23   Taken in conjunction with the other jury instructions, there was nothing that directed the jury to limit

24   the use of CALJIC 4.35 to the "status of the vehicle."  Snipes has failed to show that the instruction

25   "so infected the entire trial that the resulting conviction violates due process."  *McGuire*, 502 U.S. at

26   71-72.  In light of the above, the court recommends that claims ten and eleven be **DENIED**.

27   //

28   //

1   //

2   **Improper Dual Conviction (Claim 12)**

3    In claim twelve, Snipes contends that his conviction for both California Vehicle Code section

4   10851(a), unlawful taking and/or driving a motor vehicle, and California Penal Code section 496(d),

5   possession of a stolen motor vehicle, violates the Double Jeopardy Clause of the Fifth Amendment,

6   and his due process rights.  (FAP at 23; Mem. P&A Supp. FAP at 36-37.)  Respondent contends that

7   Snipes' convictions do not violate the Double Jeopardy Clause because the federal court must defer

8   to state court's determination of state law, and the legislature authorized dual convictions for the

9   unlawful taking and driving of a vehicle under California Vehicle Code section 10851(a).  (Mem.

10   P&A Supp. Answer at 29.)

11    The double jeopardy clause protects against multiple prosecutions and punishments for the

12   same offense.  *Jones v. Thomas*, 491 U.S. 376, 381 (1989); *North Carolina v. Pearce*, 395 U.S. 711,

13   717 (1969).  Where two statutory provisions proscribe the same offense, the legislature does not

14   always intend the imposition of two punishments for that offense.  *Rutledge v. United States*, 517 U.S.

15   292, 297 (1996).  It has long been established that "where the same act or transaction constitutes a

16   violation of two distinct statutory provisions, the test to be applied to determine whether there are two

17   offenses or only one, is whether each provision requires proof of a fact which the other does not."

18   *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  However, the *Blockburger* "rule should not

19   be controlling where, for example, there is clear indication of contrary legislative intent."  *Whalen v.*

20   *United States*, 445 U.S. 684, 690 (1980)(distinguished on other grounds).  A federal court must defer

21   to a state court's interpretation of that State's statutes.  *Missouri v. Hunter*, 459 U.S. 359, 368 (1983).

22    Snipes was convicted of a violation of California Vehicle Code section 10851(a) which states

23   that it is unlawful for an individual to take *or* drive a vehicle which is not his or her own without the

24   owner's permission.  (Cal. Veh. Code § 10851(a))(emphasis added.)  Snipes was also convicted of a

25   violation of California Penal Code section 496(d) which makes it a crime to knowingly receive stolen

26   property.  (Cal. Penal Code § 496(d).)  Snipes argues that it was improper for him to be convicted of

27   both taking/driving and possession of stolen property citing *People v. Garza*, 35 Cal.4th 866, 871-72

28   (2005).  (FAP at 23.)

1   //

2   In *Garza*, the California Supreme Court was asked to determine whether a conviction under

3   section 10851(a) barred a conviction under California Penal Code section 496(a) for receiving the

4   same vehicle as stolen property.  *Id.*  In upholding defendant's convictions on both charges the Court

5   stated:

6           Unlawfully taking a vehicle with the intent to permanently deprive the owner
        of possession is a form of theft, and the taking may be accomplished by driving the

7       vehicle away.  For this reason, a defendant convicted under section 10851(a) of
        unlawfully taking a vehicle with the intent to permanently deprive the owner of

8       possession has suffered a theft conviction and may not also be convicted under section
        496(a) of receiving the same vehicle as stolen property. On the other hand, unlawful

9       driving of a vehicle is not a form of theft when the driving occurs or continues after the
        theft is complete (for convenience, we will refer to this as "posttheft driving").

10      Therefore, a conviction under section 10851(a) for posttheft driving is not a theft
        conviction and does not preclude a conviction under section 496(a) for receiving the

11      same vehicle as stolen property.

12  *Id.*

13          The Court went on to find that there was sufficient evidence to support the section 10851(a)

14  conviction on either a taking or a posttheft driving theory because the prosecutor argued both the

15  taking and the posttheft driving theories to the jury, the jury instructions did not require they choose

16  between the theories and did not explain the rule forbidding convictions for stealing and receiving the

17  same stolen property, and the guilty verdict did not disclose which theory or theories the jurors

18  accepted.  *Id.*  The Court concluded that "when, as in this case, the evidence is such that it is not

19  reasonably probable that a properly instructed jury would have found that the defendant took the

20  vehicle but did not engage in any posttheft driving, a reviewing court may construe the Vehicle Code

21  section 10851(a) conviction as a conviction for posttheft driving and on this basis may uphold the

22  conviction under Penal Code section 496(a) for receiving the same vehicle as stolen property."  *Id.*

23          Here, as in *Garza*, Snipes was charged with both 10851(a) and 496(a).  (Lodgment No. 1, vol.

24  5 at 1027.)  The jury was instructed that it could convict Snipes if they found he either took or drove

25  the truck.  (Lodgment No. 17, vol. 11 at 1467.)  As in *Garza*, the prosecutor argued that Snipes took

26  and drove the truck.  (*Id.* at 1485.)  Similarly, the jury returned a guilty verdict which did not state

27  whether it relied on a driving or theft theory.  (*Id.* at 1560-61.)  Because the jury was properly

28  instructed, and there was evidence that Snipes engaged in posttheft driving, the appellate court could

1  reasonably have found that Snipes' conviction for 10851(a) was for posttheft driving, not for theft,

2  and therefore, it was not error for Snipes to also be convicted of 496(a) for receiving the truck as

3  stolen property.  *See Hunter*, 459 U.S. at 368.  Therefore, the court recommends this claim be

4  **DENIED**.

### Omission of Lesser Included Offense (Claim 13)

6  In claim thirteen, Snipes argues that because he was charged with the unlawful taking of a

7  vehicle (Cal. Penal Code § 10851) the trial court was required to include the lesser included offense

8  for joy riding (Cal. Penal Code § 499(b)) but failed to do so in violation of state law and his due

9  process rights.  (FAP at 24; Mem P&A Supp. FAP at 37.)  Snipes contends that the failure of the court

10  to include the lesser included offense demonstrated bias and prejudice.  (FAP at 24.)

11  Citing *Bashor v. Risley*, 730 F.2d 1228 (9th Cir. 1984), Respondent counters that Snipes

12  cannot obtain habeas relief on this claim because the Ninth Circuit has held an allegation that the state

13  court failed to instruct on a lesser included offense does not state a federal constitutional question.

14  (Mem. P&A Supp. Answer at 30.)  In addition, Respondent argues that because there is an intercircuit

15  split on whether the failure to include the lesser included offense in a non-capital case constitutes a

16  constitutional error, this Court cannot find constitutional error because it would create a new rule

17  which would be inapplicable to this case under *Teague*.[12]  (*Id.*)  Finally, Respondent claims that the

18  trial court's refusal to add the lesser included offense did not show bias or prejudice because a

19  reasonable jury could find all the elements of unlawful taking of a vehicle.  (*Id.* at 30-31.)

20  As a threshold matter, the Court addresses Respondent's contention that Snipes is not entitled

21  to relief under *Teague*.  In *Teague v. Lane*, the Supreme Court held that new constitutional rules of

22  criminal procedure will not generally apply to those cases that have become final before the new rules

23  were announced unless one of two exceptions applies.  489 U.S. 288, 290 (1989).  A new rule should

24  be applied retroactively if it (1) "places certain kinds of primary, private conduct beyond the power

25  of the criminal law," or if it (2) "requires the observance of those procedures that are implicit in the

26  concept of ordered liberty."  *Id.*

27  If a state seriously wishes to press *Teague* upon us, at a minimum *Teague*

28  _____

[12]*Teague v. Lane*, 489 U.S. 288 (1989).

06cv2531

1   should be identified as an issue (indeed the first issue) on appeal, the new rule of
2   constitutional law that falls within its proscription should be articulated, the reasons
    why such a rule would not have been compelled by existing precedent should be
3   explained with particular reference to the appropriate universe of precedent, and an
    argument should be made why the rule contended for is not within one of *Teague's*
    exceptions.

4

5   *Arredondo v. Ortiz*, 365 F.3d 778, 781-782 (9th Cir. 2004).

6   The state has failed to meet its burden. Respondent did not raise the *Teague* challenge as the

7   first issue on appeal, and simply cited *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995), asserting

8   that "[b]ecause there is an 'intercircuit split on whether the lack of a lesser included offense instruction

9   in a noncapital case presents constitutional error, any finding of constitutional error would create a

10  new rule, inapplicable to the present case under *Teague*.'" (Mem. P&A Supp. Answer at 30.) The

11  state has failed to demonstrate why this new rule of constitutional law was not dictated by existing

12  precedent, and did not state what that universe of precedent is. Further, Respondent did not argue why

13  this rule is not within one of *Teague's* exceptions. Because Respondent has failed to meet its initial

14  burden, the Court does not address Respondent's *Teague* claim, but adjudicates the claim on its

15  merits.

16  In the context of a trial court's failure to give an instruction on a theory of the defense, the

17  Ninth Circuit has noted that "[u]nder the Due Process Clause of the Fourteenth Amendment, criminal

18  prosecutions must comport with prevailing notions of fundamental fairness . . . [which] require that

19  criminal defendants be afforded a meaningful opportunity to present a complete defense." *Bradley*

20  *v. Duncan*, 315 F.3d 1091, 1098-99 (9th Cir. 2002) (citing *Mathews v. Unites States*, 485 U.S. 58, 63

21  (1988) and *California v. Trombetta*, 467 U.S. 479, 485 (1984). Thus, a "'[f]ailure to instruct on the

22  defense theory of the case is reversible error if the theory is legally sound and evidence in the case

23  makes it applicable.'" *Clark v. Brown*, 450 F.3d 898, 904-05 (9th Cir. 2006) (quoting *Beardslee v.*

24  *Woodford*, 358 F.3d 560, 577 (9th Cir. 2004)); *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000);

25  *Bashor*, 730 F.2d at 1240 (quoting *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976)). However, the

26  Supreme Court has recognized "that due process requires that a lesser included offense instruction be

27  given only when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611

28  (1982). In California, a trial judge must instruct the jury on lesser included offenses if they are

1   supported by substantial evidence, including defenses that are not inconsistent with defendant's theory

2   of the case. *People v. Breverman*, 19 Cal. 4th 142, 148-49 (1998); *People v. Montoya*, 7 Cal. 4th

3   1027, 1047 (1994).

4           Here, Snipes did not assert joyriding as a theory of defense, and the record does not reflect

5   facts which would support the lesser included offense.[13]  Instead, Snipes asserted an ignorance of fact

6   defense claiming that he mistakenly thought the truck belonged to "Steve" who gave Snipes

7   permission to sit in the truck while he bought drugs.  If the court accepted this defense, the lesser

8   included offense of joyriding would be inapplicable because Snipes was given permission to use the

9   truck from "Steve."  Therefore, the trial court's failure to include the lesser included offense of

10  joyriding did not violate Snipes' constitutional rights. *See Hopper*, 456 U.S. at 611.

11          Further, the trial court's failure to instruct on joyriding did not reflect bias or prejudice.  There

12  was sufficient evidence for a reasonable jury to find all the elements of the crime of unlawful taking

13  or driving of a motor vehicle, obviating the need for the lesser included instruction.  (Lodgment No.

14  17, vol. 11 at 1451; *see also* Lodgment No. 17, vol. 12 at 1610)*; see also People v. Barton*, 12 Cal.4th

15  186. 194-95, 906 P.2d 531, 47 Cal.Rptr. 2d 569 (1995) (a trial court has no duty to instruct on lesser

16  offenses where there is no evidence offense was less than that charged, but should so instruct when

17  there is a question about whether all elements of charge were present.).  Further, Snipes has provided

18  no evidence that overcomes the presumption of honesty and integrity of the court. *See Withrow v.*

19  *Larkin*, 421 U.S. 35, 47 (1975).  For the above reasons, the Court recommends claim thirteen be

20  **DENIED**.

21                              **Prosecutorial Misconduct (Claim 14)**

22          Snipes argues in claim fourteen, that the prosecutor committed approximately ten instances

23  of misconduct during closing arguments.  (FAP at 24.)  Specifically, Snipes contends that the

24  prosecutor (1) misstated the standard for reckless evasion by incorrectly arguing it was irrelevant that

25  Snipes did not know it was police who approached and pursued him, and that Snipes did not see the

26  red lamp; (2) incorrectly stated that the standard under reckless evasion was not a "reasonable person"

27

28          [13]California Penal Code section 499(b) provides that any person who takes a bicycle or vessel
    without the permission of the owner, for the purpose of temporarily using or operating the vehicle is guilty
    of a misdemeanor.  Cal. Penal Code §499(b).

but a "reasonable juror"; (3) improperly told the jurors that they should place themselves in the shoes of the police officers when considering the excessive force claim by imagining what it would be like to be "unarmed at night in an unknown and dangerous area of town" (Mem. P&A Supp. FAP at 39); (4) improperly argued that Snipes could not assert the defense of excessive force by police officers because he maintained during trial that he did not know it was officers following him; (5) argued, over his objection, that the given excessive force instruction did not apply to the facts of the case; (6) wrongfully attacked the defense reconstruction expert as a jack of all trades; (7) improperly argued that the speed he was driving during the pursuit was irrelevant; (8) incorrectly argued that the defense of voluntary intoxication required an individual be unconscious, unable to walk, get into the truck, start the ignition or drive; (9) improperly argued that Snipes had a perfect memory despite Snipes' contention that he had forgotten the details of the evening, and (10) improperly argued that Snipes was manipulative and a liar.  (FAP at 24-25; Mem. P&A Supp. FAP at 39-40.)  Snipes further argues that the errors violated his due process rights citing *Brecht*, 507 U.S. at 637-38.  (Mem. P&A Supp. FAP at 40.)[14]

Respondent counters that the prosecutor did not commit misconduct during closing argument. (Mem. P&A Supp. Answer at 31.)  Moreover, Respondent contends that even if the prosecutor did misstate the law or  improperly argue, any error was harmless under *Brecht*.  (*Id.* at 32-38.)

To  establish a claim of prosecutorial misconduct, a petitioner must show: (1) the prosecutor's actions amounted to constitutional error and (2) the error was not harmless.  *Greer v. Miller*, 483 U.S. 756, 765-66 (1987).  In determining whether there was constitutional  error, the Supreme Court has stated that the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Thompson v. Borg*, 74 F.3d 1571, 1577 (9th Cir. 1996.  The "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455

---

[14]Snipes raised a prosecutorial misconduct claim on state habeas to the California Court of Appeal.  (Lodgment No. 11.)  The appellate court denied his claim stating "Although Petitioner has carefully documented all of his claims with citation to authority and the appellate record, he has not established that there is any merit to any of his arguments."  (Lodgment No. 12.)

U.S. 209, 219 (1982).  The reviewing court must look at the trial as a whole and place the prosecutor's remarks in context.  *See Greer*, 483 U.S. at 765-66; *see also Burks v. Borg*, 27 F.3d 1424, (where reviewing court found prosecutorial misconduct during closing argument but no error because trial court took prompt and effective action to neutralize any potential prejudice.)  Improper closing arguments do not necessarily violate a defendant's constitutional rights.  *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir. 1987)

### Reckless Evasion Mental State

Snipes contends the prosecutor committed misconduct by arguing it was irrelevant whether Snipes knew it was police in pursuit for the reckless evasion charge.  (FAP at 24.)  The prosecutor argued that "[e]ven if [Snipes] were unaware that they were police officers, if he specifically intends to evade, then he's on the hook on this element." (Lodgment No. 17, vol. 11 at 1483.)  The prosecutor correctly stated that reckless evasion is a specific intent crime, and that as long as the jury found Snipes had the requisite intent, this element of the crime was proven.  *See* CALJIC No. 3.31.  Further, under California Vehicle Code sections 2800.1 and 2800.2, the prosecution must show either that the driver knew police were in pursuit, or that a person reasonably should have known that a police officer was in pursuit.  Cal. Veh. Code §§ 2800.1, 2800.2; *People v. Estrella*, 31 Cal. App. 4th at 723 (1995) (*see also People v. Hudson*, 38 Cal. 4th 1002, 1010-11 (2006.)  Therefore, the prosecution's argument in closing was a correct statement of the mental state required under reckless evasion.

In addition, Snipes argues that the prosecutor misstated the objectively reasonable person standard as it applies to the reckless evasion charge, stating that it was what an objectively reasonable "juror" would think.  (FAP at 24.)  Snipes is correct that the standard under sections 2800.1 and 2800.2 is the reasonable person test.  *See Hudson*, 38 Cal. 4th at 1009; *People v. Chicanti*, 71 Cal.App.4th 956, 962 (1999) (overruled on other grounds).  However, Snipes has not demonstrated that the prosecutor's depiction of the reasonable person standard as the reasonable juror standard resulted in a due process violation, or that there is any appreciable difference between the two standards.  The jury was correctly instructed on the elements of reckless evasion, and was admonished that if there was a conflict between the attorney's statements of the law and the court's instructions, they were to follow the court's instructions.  (Lodgment No. 17, vol. 11 at 1469-70; *Id.* at 1456.)

1  Juries are presumed to follow instructions. *Wainwright v. Witt*, 469 U.S. 412 (1985); *Francis v.*

2  *Franklin*, 471 U.S. 307, 324 n.9 (1985).   In addition, there was sufficient evidence produced

3  throughout trial demonstrating Snipes' guilt.  Considering the trial as a whole, as it must, the Court

4  concludes that even if the prosecutor's statement of the law was not correct, it did not render the trial

5  fundamentally unfair. *See Greer*, 483 U.S. at 765-66.  For the same reasons, any misconduct did not

6  have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507

7  U.S. at 623; *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) ("Prosecutorial misconduct which

8  rises to the level of a due process violation may provide the grounds for granting a habeas petition

9  only if that misconduct is deemed prejudicial under the 'harmless error' test articulated in *Brecht*.")

10                                     **Excessive Force**

11         Snipes contends that the prosecutor inappropriately suggested that the jurors needed to imagine

12  what it was like to be "unarmed at night in an unknown and dangerous area of town" when

13  approaching a stolen vehicle to understand the mental state of the police officers when considering

14  an excessive force defense.  (Mem. P&A Supp. FAP at 39.)  During rebuttal, the prosecutor stated that

15  most people are unaccustomed to the dangers attendant with the duties of being in law enforcement,

16  including the apprehension of people who are suspected of having committed felonies.  (Lodgment

17  No. 17, Rprtr's Tr vol.11 at 1543.)  To that end, the prosecutor explained that "maybe through your

18  life experiences you've had, just walking down a dark street in a bad part of town at night,

19  apprehension, a little fear.  ¶  Imagine the law enforcement officers who are sworn to uphold the law,

20  enforce the law and apprehend those that break the law.  Multiply that apprehension by about a

21  hundred."  (*Id.* at 1543-44.)

22         The United States Supreme Court has held that in evaluating a misconduct claim, "the

23  reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into

24  account defense counsel's opening salvo." *United States v. Young*, 470 U.S. 1, 12-13 (1985) (finding

25  no misconduct where a prosecutor's closing argument were an "invited response" to defendant's

26  attacks during closing argument.)  Here, the prosecutor's comments were "invited" by Snipes'

27  argument during his closing that the police officers used excessive force because "these officers then

28  pulled up, jumped out of their vehicles, ran up on the truck . . . drew their guns and ran up on a person

1    sitting in the truck, screaming and yelling, scaring me to death." (Lodgment No. 17, vol. 11 at 1540-

2    41.)  Snipes did not object to the prosecutor's comments during rebuttal, despite making numerous

3    objections during other portions of the prosecutor's closing remarks and rebuttal.  (*Id.* at 1543-44.)

4    The prosecutor's comments served as a response to Snipes' contention that the police officers

5    approached his vehicle using excessive force, noting that the officers' apprehension was justified and

6    that their actions were responsive to the situation.  *See Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1114-

7    15 (9th Cir. 2005) (no prosecutorial misconduct where potentially inflammatory arguments were

8    relevant to facts and issues in the case.)

9          Even if the prosecutor's comments were improper, Snipes fails to show that these comments

10   had a "substantial and injurious effect" on the jury's verdict.  *Brecht*, 507 U.S. at 619.  As noted

11   above, the trial court admonished the jury to follow the law and refrain from considering the attorney's

12   statements as evidence.  (Lodgment No. 17, vol. 8 at 903; vol. 11 at 1457-58.)

13                                    **Excessive Force Instruction**

14          Snipes contends that the prosecutor improperly argued that (1) Snipes could not claim that

15   the police officers had used excessive force because Snipes had argued he was unaware that it was

16   police officers approaching and pursuing him, and (2) the excessive force instruction did not apply

17   because the police did not inflict any direct physical force upon him during the detention.  (FAP at 39.)

18          Respondent argues that Snipes does not cite any authority which refutes the prosecutor's claim

19   that excessive force requires physical contact between an officer and a defendant, and that Snipes'

20   own testimony that he was unaware police were in pursuit renders the instruction inapplicable.  (Mem.

21   P&A Supp. Answer at 34.)  For these reasons, Respondent contends that the prosecutor's arguments

22   did not render the trial fundamentally unfair, and were harmless under *Brecht*.

23          In his rebuttal, the prosecutor challenged the applicability of CALJIC 9.26 [Arrest or

24   Detention- - Use of Reasonable Force - - Duty to Submit], reading the portion of the instruction which

25   states:

26              Where a peace officer is making a detention and the person being detained has
             knowledge or by the exercise of reasonable care should have knowledge that he is
27           being detained by a police officer, it is the duty of the person to refrain from using
             force, flight or any weapon to resist detention unless unreasonable or excessive force
28           is being used to make the detention.

1  (Lodgment No. 17, vol. 11 at 1545.)

2  //

3      The prosecutor argued that the only force applied to Snipes was that his cap was touched by

4  officer, and that "force" as contemplated in this instruction, generally means a fight between the

5  officers and the felon, which did not occur here. (Lodgment No. 17, vol. 11 at 1545.)  Because Snipes

6  argued that he didn't recognize the police officers as such, the prosecutor left it to the jury to

7  determine whether the instruction applied.  (*Id.*)  Snipes vigorously argued throughout trial that he had

8  been attacked by unknown assailants, and was unaware until much later that he had been approached

9  by police officers.  In light of Snipes' contention that he was unaware that the police officers were in

10  fact, police officers, it was appropriate for the prosecutor to argue that the excessive police force

11  instruction was potentially inapplicable, and leave it for the jury to decide.

12      Moreover, Snipes makes only bare allegations concerning the prosecutor's misconduct in

13  asserting that excessive force requires physical contact between the officer and suspect, citing no

14  authority.  The determination as to how much physical force is required to constitute excessive force

15  is a fact specific inquiry.  The Ninth Circuit has held that an officer pointing a gun at a suspect's head

16  where there were no exigent circumstances was unreasonable, *Robinson v. Solano County*, 278 F.3d

17  1007 (9th Cir. 2002), and yet found that rough handling under the exigent circumstances that were

18  present was not excessive force.  *Jackson v. City of Bremerton*, 268 F.3d 646, 651-53 (9th Cir. 2001).

19  In light of the fact that the only physical contact between Snipes and the officer was the touching of

20  his baseball cap, and Snipes has presented no evidence to the contrary, it was appropriate for the

21  prosecution to argue the applicability of the excessive force instruction, and Snipes has not

22  demonstrated otherwise.  The prosecutor's arguments were harmless under *Brecht* for the same

23  reasons.

24                         **Accident Reconstruction Defense Expert**

25      According to Snipes, the prosecutor improperly attacked the defense accident reconstruction

26  expert, Dr. Vomhof, as a "jack of all trades and a master of none." (FAP at 25.)  On rebuttal, the

27  prosecutor argued, without Snipes objecting, that Dr. Vomhof stated he was an expert in thirty or forty

28  areas, and has a curriculum vitae that spans two to three pages. (Lodgment No. 17, vol. 11 at 1547.)

1   In light of Dr. Vomhof's "broad spectrum expertise", the prosecutor suggested that the jury take his

2   testimony "with a grain of salt." (*Id.*)  The prosecutor further noted that Dr. Vomhof made a few

3   calculation errors, and that he "doesn't publish in the areas he testifies in.  Reason being: He doesn't

4   want to be cross-examined about them." (*Id.*)

5         A "prosecutor may argue reasonable inferences from the evidence presented." *Menendez v.*

6   *Terhune*, 422 F.3d 1012, 1037 (9th Cir. 2005).   "While courts must allow the prosecution to strike

7   "hard blows" based on the evidence presented and all reasonable inferences therefrom, they may not

8   permit "foul blows." *Gwaltney*, 790 F.2d at 1385.

9         The prosecutor here did nothing more than draw an inference concerning the weight the jury

10  should give Dr. Vomhof's testimony in light of the fact that Dr. Vomhof stated that he was an expert

11  in many areas, did not publish in those areas because the printed materials could be used to impeach

12  him in court, had a curriculum vitate spanning two to three pages, and made a calculation error

13  regarding the rate of acceleration of a vehicle. (Lodgment No. 17, vol. 10 at 1330-37, 1340, 1414-15,

14  1422-23.)  It was reasonable for the prosecutor to strike at Dr. Vomhof's alleged expertise in light of

15  his testimony and Snipes' reliance on him to provide accurate and reliable accident reconstruction

16  analysis.  There was no error here.

17                              **Driving Speed**

18        According to Snipes, the prosecutor initially stated that speed was relevant, and did not

19  challenge Dr. Vomhof on the issue, but then improperly argued in closing that Snipes' speed in driving

20  from point A to Z was irrelevant.  (FAP at 25.)  During trial the prosecutor stated that the speed upon

21  impact was not relevant because Snipes had stipulated to causing property damage, which satisfied

22  the willful or wanton element of reckless evasion. (Lodgment No. 17, vol. 715-16.)  The court agreed.

23  (*Id*. at 717.)  In his closing argument, the prosecutor reiterated that Dr. Vomhof's testimony regarding

24  the rate of speed Snipes was driving was irrelevant "[b]ecause the crimes charged do not require that

25  any particular speed was had.  We don't care if he was going 15 miles an hour or if he was going 150."

26  (Lodgment No. 17, vol. 11 at 1547.)  Snipes did not object to the prosecutor's comments.  (*Id.*)

27  Because element eight of a reckless evasion charge can be satisfied by showing evidence of property

28  damage alone, the prosecutor did nothing more than correctly restate the law, and directed the jury to

1   the fact that speed was irrelevant here because Snipes had already stipulated to the property damage

2   element.  Accordingly, there was no error and no prejudice.  *Wainwright*, 477 U.S. at 181.

3                                    **Voluntary Intoxication**

4            Snipes argues that the prosecution incorrectly stated that the defense of voluntary intoxication

5   requires total unconsciousness i.e., inability to walk, stand up, or drive.  (FAP at 25.)  In response to

6   Snipes' contention during his closing remarks that he was "extremely drunk" at the time of the

7   incident, the prosecutor stated in rebuttal that "intoxication operates as a defense if you're so

8   intoxicated that you don't know what you're doing. . . [s]o drunk that. . . you didn't flee.  So drunk

9   that you didn't steal.  You are so drunk that you can't put the key in the ignition.  You can't back it

10  up, and you sure as heck can't avoid the police.  You can't drive a 1.1 mile, swerving in and out of

11  traffic, [lights] blacked out and avoid hitting something or somebody."  (Lodgment No. 17, vol. 11

12  at 1551.)  The prosecutor's argument was an "invited response" to Snipes' introduction of the

13  voluntary intoxication defense, and refuted that defense to the extent he noted that Snipes was able

14  to drive in the dark, without lights, avoiding traffic for over a mile until he hit the wall, therefore it

15  did not constitute misconduct.  *Young*, 470 U.S. at 12-13.  Further, the prosecutor did not argue that

16  a person had to be unconscious to qualify for the defense, as Snipes claims.

17           Even if the prosecutor misstated the defense of voluntary intoxication, arguing that a person

18  must be so intoxicated that they cannot steal, flee or put a key in the ignition to use the defense, it did

19  not violate Snipes' due process rights.[15]  As previously noted, the trial court advised the jury that if

20  there was a conflict between the attorney's statements of the law and the court's instructions, they

21  were to follow the court's instructions.  Regarding Snipes' defense of voluntary intoxication, the trial

22  court instructed the jury that "[i]f the evidence shows that the defendant was intoxicated at the time

23  of an alleged crime, you should consider that fact in deciding whether defendant had the required

24  specific intent or mental state."  (Lodgment No. 17, vol. 11 at 1471.)  The jury presumably followed

25  the court's instruction, therefore Snipes suffered no prejudice as a result of the prosecutor's comments.

26  _____

27           [15]Under California law, "evidence of voluntary intoxication is admissible solely on the issue of
    whether or not the defendant actually formed a required specific intent."  Cal. Penal Code. § 22; *People v.*
28  *Boyer*, 42 Cal.Rptr. 3d 677, 38 Cal.4th 412, 133 P.3d 581 (2006) ("Voluntary intoxication, even if it
    induced unconsciousness, is not a defense to crime as such, though it may be relevant to whether the
    defendant formed a specific intent necessary for its commission.")

1   *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

2   //

3       Snipes' own testimony supports the contention that he was not too intoxicated to form the

4   specific intent required under reckless evasion; he responded to the approaching officers by starting

5   the truck, backing it up, and driving out of the parking lot on to a busy street where he drove over a

6   mile without headlights, weaving in and out of traffic while looking to see if someone was following

7   him.  Further, Snipes admitted at trial that because he drank consistently, his response to alcohol was

8   different than a normal person in that he could ingest far more alcohol and still function.  (Lodgment

9   No. 17 vol. 11 at 1527.)  In light of the above, any misconduct was harmless under *Brecht*.

10                                       **Memory And Credibility**

11       Snipes asserts that the prosecutor improperly argued during closing that Snipes had a perfect

12   memory and that he was a liar, contrary to the evidence Snipes produced showing that he had amnesia

13   and memory problems.  (FAP at 25.)  At the end of his rebuttal, the prosecutor told the jury that

14   despite Snipes' assertions that his memory was very good, during cross examination Snipes admitted

15   that in a sworn document filed in court he stated that he had almost no memory of the events and had

16   pieced it together the three months prior to filing the document.  (Lodgment No. 17, vol, 11 at1552-

17   53.) The prosecutor went on to state, "I'm not suggesting that he doesn't remember what happened.

18   I'm suggesting that he's not telling the truth to you; that he has no credibility whatsoever.  The

19   credibility in this case lies with the poor fella who got his car stolen and the three officers whose job

20   it was to track this guy down and bring him to justice.  ¶ Please, this man is extremely manipulative.

21   Do not be fooled by him."  (*Id.* at 1553.)  Snipes made no objection to the prosecutor's argument.

22   (*Id.*)

23       During argument, a prosecutor may characterize the testimony of a defendant or witness as lies

24   or fabrication.  *Turner v. Marshall*, 63 F.3d at 818, overruled on other grounds by *Tolbert v. Page*, 182

25   F.3d 677(9th Cir. 1999).  During trial, Snipes gave detailed testimony about the events of the evening

26   of the crimes, testifying that he was picked up by his friend "Steve" in the black truck, and went to

27   buy drugs at a few houses.  They stopped at the Taco Bell parking lot where "Steve" told Snipes to

28   wait in the truck while he bought more drugs.  Snipes asked for the keys so he could listen to the radio,

1   but stated that he had a hard time operating it, and fell asleep in the driver's seat. He was awakened

2   by someone yelling, and due to the lighting in the parking lot, could only see silhouettes of the persons

3   approaching him with drawn guns.  He was able to quickly start the truck, back it up, then ducked

4   down while driving out of the parking lot to escape his attackers.  Snipes testified that he drove up the

5   road going approximately 35 to 45 miles per hour, checking behind him to see if anyone was

6   following him.  When he realized he was too drunk to drive, he turned a corner to park and fell out

7   of the truck.  (Lodgment No. 17, vol. 9, 1176-91, 1199-1202, 1205-07, 1213-16.)

8          However, on cross-examination, he admitted that he had filed a sworn document in court that

9   asserted that he "had nearly no memory and has pieced it together over the last three months."

10   (Lodgment No. 17, vol. 9 at 1194.)  In his rebuttal remarks, the prosecutor  drew a reasonable

11   inference

12   from Snipes' testimony and responded to Snipes assertions to "right the scales." *Robinson*, 485 U.S.

13   25, 43 (1988).  There was no misconduct and no error.

14          As illustrated above, a de novo review of the record demonstrates that Snipes is not entitled

15   to relief on claims 1, 2, 4, 9, 10, 11, 12, 13, 14, and the portion of claim 3 alleging denial of counsel.

16   Accordingly, the court recommends that these claims be **DENIED** on the merits notwithstanding any

17   procedural default.

18          **2.**     **Denial of Advisory Counsel (Claim 3)**

19          In claim three, Snipes argues that he was denied advisory counsel numerous times before and

20   during trial. (FAP at 10, Mem. P&A Supp. FAP at 8.)  Respondent counters that there is no

21   constitutionally guaranteed right to advisory counsel, that Snipes acknowledges as much, and

22   therefore the Court of Appeal reasonably rejected this claim on direct appeal.  (Mem. P&A Supp.

23   Answer at 11.)

24          Snipes presented this claim to the California Supreme Court in his Petition for Review, which

25   was silently denied.  (*See* Lodgment Nos. 13, 14.)  Because the dispositive order from the state's

26   highest court does not provide a reasoned decision, the Court "looks through" to the underlying

27   appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  The Court of Appeal

28   stated:

Snipes elected to represent himself at trial.  However, on at least two occasions, Snipes moved for appointment of an advisory counsel to assist him in his defense.  The court denied both motions.

California courts have discretion to appoint advisory counsel to assist an indigent defendant who elects to represent himself. [Internal citations omitted.]  However, "[a] criminal defendant does not have a right to simultaneous self-representation and representation by counsel. (Citations.) '[n]one of the "hybrid" forms of representation, whether labeled "cocounsel," "advisory counsel," or "standby counsel," is in any sense constitutionally guaranteed.' (Citation.) [Citations omitted.]  When ruling on a request for advisory counsel, the court may consider the defendant's intelligence and verbal skills [ciations], demonstrated legal abilities and reasons for seeking advisory counsel, and whether the motion represented an effort to manipulate the legal proceedings. [Citations.] However, California courts have distinguished between capital and noncapital cases in ruling on a request for appointment of advisory counsel.

A court's ruling on a request for advisory counsel in a capital case will be reviewed on appeal and will not be reversed absent an abuse of discretion. [Citations.]  If an abuse of discretion is found, the conviction will be reversed. [Citations.] In a noncapital case, however, although the trial court has the option of appointing advisory counsel, its ruling on that appointment is not subject to appellate review; there can be no abuse of discretion in denying a request for advisory counsel in a noncapital case. [Citations.]

Snipes does not dispute his waiver of the right to counsel was valid.  Moreover, he had consistently demonstrated his ability to represent himself: He filed numerous preliminary motions (e.g. to suppress, for discovery, for appointment of an investigator, and to dismiss) and numerous pretrial in limine motions; he engaged in jury voir dire and raised a *Wheeler* motion; he requested jury instructions and raised objections to the People's proposed instructions; he cross-examined the People's witnesses and presented witnesses (including expert testimony) supporting his defenses; and he presented both opening and closing statements.  Finally, this matter did not present highly complex legal issues [citation], but instead turned on factual disputes recognized and addressed by Snipes' self-prepared defense.  Because Snipes established his right to represent himself, the trial court's declination to appoint advisory counsel ended the matter.

(Lodgment No. 5 at 5-7.)

"[A] defendant who waives his right to counsel does not have a right to advisory counsel." *United States v. Moreland*, 509 F.3d 1201, 1208-09 (9th Cir. 2007); *accord McKaskle*, 465 U.S. at 183.  Snipes readily admits there is no constitutional right to advisory counsel.  (Mem. P&A Supp. FAP at 10.)  Because there is no clearly established Supreme Court law establishing Snipes' right to advisory counsel, he is not entitled to relief.  *Lockyer*, 538 U.S. at 71-75.  Accordingly, the California Court of Appeal's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.   *Himes*, 336 F.3d at 853.

In addition, the appellate court's determination was not an unreasonable determination of the

1    facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d)(2).  Snipes

2    demonstrated through his numerous pretrial and in limine motions, jury voir dire, and examination of

3    witnesses that he had sufficient intelligence and verbal skills to represent himself.  *People v. Clark*,

4    3 Cal.4th 41, 111 (1992).  The appellate court's determination is supported by the record and facts

5    presented to the trial court.  The Court recommends that the portion of claim three challenging the

6    denial of advisory counsel be **DENIED**.

7        **3.    Insufficient Evidence (Claim 5)**

8        In claim five, Snipes argues that his due process rights were violated because there was

9    insufficient evidence to prove that he saw, or reasonably could have seen, the police vehicles with

10   lighted red lamps pursuing him because the officers were not directly behind him during the chase and

11   he went over a hill obscuring his view.  (FAP at 18.)  Snipes cites *In re Winship*, 397 U.S. 358, 364

12   (1970), *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993), and *Jackson v. Virginia*, 443 U.S. 307, 319

13   (1979), in support of his claim that the prosecution failed to prove each and every element of

14   California Vehicle Code section 2800.2.  (Mem. P&A Supp. FAP at 21.)

15       Respondent counters that there was ample evidence that Snipes saw, or should have seen,

16   Officer Bassett's lighted red lamp and that he willfully evaded her, therefore, the Court of Appeal

17   reasonably applied *Jackson,* 443 U.S. at 319 when it rejected this claim.  (Mem. P&A Supp. Answer

18   at 17-18.)

19       Snipes raised a different sufficiency of the evidence claim regarding his reckless evasion

20   conviction in his petition for review in the California Supreme Court, specifically arguing that there

21   was insufficient evidence to prove that he drove in a reckless and wanton manner endangering other

22   people or property.  (Lodgment No. 6 at 24.)  The petition was denied without citation to authority.

23   (Lodgment No. 7.)  As before, this Court must "look through" to the California appellate court's

24   decision denying the claim.  *See Ylst*, 501 U.S. at 801-06.  The appellate court stated that "substantial

25   evidence supports finding on each of the . . . elements of the section 2800.2, subdivision (a) offense,

26   [therefore] there is substantial evidence to support the conviction.

27       In assessing a sufficiency of the evidence claim, the Supreme Court has stated that "'the

28   relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

-50-

1   *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

2   doubt.'" *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005), quoting *Jackson*, 443 U.S. at 319.

3   In determining whether sufficient evidence has been presented, the Court must accept the elements

4   of the crime as defined by state law. *See Jackson*, 443 U.S. at 324, n. 16.

5   //

6          To convict a defendant of reckless evasion under California law, a prosecutor must prove

7   beyond a reasonable doubt that (1) the defendant willfully fled or attempted to elude a pursuing police

8   officer, (2) the defendant had the specific intent to evade the pursuing police officer, (3) the peace

9   officer displayed a lighted red lamp visible from the front, (4) the defendant saw, or reasonably should

10  have seen, the red lamp, (5) the police officer sounded a siren as reasonably necessary, (6) the police

11  officer's vehicle was distinctively marked, (7) the peace officer's vehicle was operated by a peace

12  officer wearing a distinctive uniform, and (8) the driver of the pursued vehicle drove the vehicle with

13  a wanton disregard for the safety of people and property. *See* Cal. Veh. Code §§ 2800.1. 2800.2(a),

14  CALJIC 12.85.

15         The record demonstrates that there was sufficient evidence for the jury to determine that Snipes

16  saw, or reasonably should have seen, the lighted red lamp of Officer Bassett's patrol vehicle. Bassett

17  testified that she arrived at the Taco Bell parking lot, pulled in at an angle behind the truck, then

18  approached the truck and discovered Snipes in the driver's seat. (Lodgment No. 17, vol. 5 at 1074-

19  78.) According to Bassett, she drew her gun, pointed it at Snipes, who looked directly at her, and he

20  did not comply when Bassett ordered him to get his hands up. (*Id.* at 1078-79.) Bassett testified that

21  Snipes then started the truck, backed it out of the driveway so quickly that he hit a cement divider,

22  then exited the parking lot without headlights on and headed up the hill on College Avenue. (*Id.* at

23  1080-81.) Bassett stated that she quickly returned to her vehicle, backed up and headed out of the

24  parking lot, turning on the overhead lights, as well as the siren, as she exited the parking lot. (*Id.* at

25  1082.) Bassett testified that she could see the truck about halfway up the hill as she exited the parking

26  lot. (*Id.*)

27         The testimony of other witnesses confirmed Bassett's testimony. Mr. Mooney, a friend of the

28  victim, corroborated Bassett's recollections, noting that in addition to Officer Bassett's vehicle,

1   another police vehicle arrived as backup, and the officers in that vehicle activated their overhead red

2   lamps as they departed the Taco Bell parking lot in pursuit.  (*Id*. at 1023.)  The testimony of the other

3   officers confirmed Bassett's testimony, stating that she left the parking lot a few seconds behind

4   Snipes, and they left the parking lot a few seconds behind Bassett.  (*Id*. at 1117-26, 1139-44, 1151-60.)

5   They testified that they could see Bassett's vehicle in pursuit with the red flashing lights visible.  (*Id.*)

6        Viewing the record in the light most favorable to the prosecution, as this Court must, it was

7   clear that Officer Bassett's police vehicle had the red lamp lighted while pursuing Snipes and was a

8   few seconds behind him while they traveled up the hill on College Avenue, leading any rational trier

9   of fact to the conclusion that Snipes saw, or reasonably should have seen, the lighted red lamp in his

10  rearview mirror.  *Jackson*, 443 U.S. at 319.  Snipes argues that he was too far ahead of Bassett to be

11  able to see the red lights, and that he crested the hill before she was able to gain ground on him,

12  making it impossible for him to see the flashing red light.  However, the testimony of multiple

13  witnesses contradicts Snipes assertion, and verifies Bassett's testimony that there was only a few

14  second delay between her vehicle and Snipes, making the vehicles visible to each other as they headed

15  up the hill on College Avenue.  There is sufficient evidence to support the jury's finding that Snipes

16  saw, or reasonably should have seen, the red flashing lights of the pursuing police vehicle, thereby

17  satisfying the elements of reckless evasion under California law.  *Juan H.*, 408 F.3d at 1274.

18        Because the evidence in the present case reasonably supports the jury finding each of the

19  elements of reckless evasion beyond a reasonable doubt, the appellate court did not violate the

20  mandates of *Winship* and *Jackson*.  *See generally Wright* v. *West*, 505 U.S. 277, 290 (1992) (citing

21  *Jackson*, 443 U.S. at 336 n. 9) (state court judgments applying *Jackson* are entitled to deference

22  because state judges are more familiar with state law than federal judges and are therefore better able

23  to evaluate sufficiency claims.)  Accordingly, the appellate court's denial of this claim was not

24  contrary to, nor an unreasonable application of, clearly established federal law.  The Court

25  recommends claim five be **DENIED**.

26        **4.      Involuntary Stipulation (Claim 6)**

27        Snipes contends in claim six that he was forced into making a stipulation that was not knowing

28

1   or voluntary to element eight of the reckless evasion charge[16] (Cal. Vehicle Code section 2800.1).

2   (Mem. P&A Supp. FAP at 23.)  Petitioner argues that he stipulated to being the driver of a pursued

3   vehicle and that there was consequent damage to the vehicle and property, but not to "driving wilfully

4   and wantonly with deliberate disregard to property and people."  (*Id.* at 22-23.)  Snipes states,

> no where do they ever enlighten me to what a stipulation is, and all of its impact (direct consequences) in trial - - on the evidence, to the defenses, and on the jury - - nor in any later appeal.  My arguments and objections clearly illustrate my ignorance - - but rather than trying to ensure that any stipulation was knowingly and intelligently entered into willfully - - the judge was in it to broker a deal to my disadvantage.

(FAP at 19.)

9         Respondent counters that Snipes' stipulation was voluntary and knowing as demonstrated by

10  the record, and therefore, the California Court of Appeal's rejection of this claim was reasonable.

11  (Mem. P&A Supp. Answer at 18.)  Respondent further contends that even had the stipulation been

12  infirm, Snipes has failed to establish it had any "substantial and injurious effect" on the jury's verdict

13  citing *Brecht*, 507 U.S. at 637-38..  (*Id.* at 21.)

14        Snipes challenged the validity of his stipulation under a sufficiency of the evidence claim in

15  his direct appeal to the California Supreme Court.  (Lodgment No. 6 at 24.)  The Supreme Court

16  silently denied the claim.  (Lodgment No. 7.)  Therefore, this Court must "look through" to the

17  California appellate court's decision denying the claim.  *See Ylst*, 501 U.S. at 801-06.  The appellate

18  court found that Snipes knowingly entered into the stipulation, stating:

> We are not persuaded by Snipes' claim on appeal that he intended to stipulate only that there was property damage and did not intend to stipulate to the wanton disregard element as a whole.  A fair reading of the entirety of the discussion shows Snipes *did* intend to stipulate to this element, and was concerned only that it not impinge on his principal defense that he was unaware officers were pursuing him.  Because "element 8" was stipulated to before trial, and substantial evidence supports finding on each of the other elements of the section 2800.2, subdivision (a) offense, there is substantial evidence to support the conviction.

---

[16]Element eight of count three requires that the prosecution prove beyond a reasonable doubt that "the driver of the pursued vehicle drove the vehicle in a wanton disregard for the safety of persons or property."  (Lodgment No. 1, Clerks Tr. vol. 5 at 1139-40.)  At the time of trial, California Vehicle Code section 2800.2(b) stated that "[f]or purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, *or damage to property occurs*.  (Cal. Veh. Code §2800.2) (emphasis added.)

1    (Lodgment No. 5 at 4-5.)

2         The Ninth Circuit has held that a stipulation which underlies a conviction must be voluntary

3    and knowing to uphold the conviction. *Adams v. Peterson*, 968 F.2d 835, 843 (9th Cir. 1992).  The

4    *Adams* court further held that a defendant must understand the content of a stipulation, and the

5    likelihood of a guilty finding for a stipulation to be valid and binding.  *Id.* at 844.  "It is the

6    responsibility of the trial judge when accepting a stipulation or waiver to assure that it is voluntarily

7    made." *United States v. Miller*, 588 F.2d 1256, 1264 (9th Cir. 1978) (finding that stipulations of fact,

8    which do not constitute guilty pleas, are entitled to trial court determination of voluntariness).

9         From the record it appears Snipes voluntarily entered into the stipulation, but that he did not

10   clearly understand the ramifications of the stipulation.  At a pre-trial discussion about the relevance

11   of evidence about the speed of the truck, the following exchange took place:

12   Snipes:          We're not - - - going into the speed at the time of the accident, so we're not
                      going into the extent of the damage to the vehicle or any of that as well.
13                    Because that's going to be irrelevant.  There was damage.  That's stipulated.
                      Would that be factual?
14   Court:           People?
     Hellstrom (Prosecutor):  [I]s the defendant stipulating that the vehicle was damaged and that
15                    the retaining wall was damaged?
     Snipes:          I am.
16   Court:           You understand that's an element of the charge?
     Snipes:          I understand.
17   Hellstrom:       Very well. We'll enter into that stipulation.
     Court:           Okay.  The stipulation is received as to the element in the Third Count as to
18                    whether the vehicle was damaged in the flight or whether the wall was
                      damaged, it's stipulated that both the vehicle and the wall were damaged in the
19                    flight from Taco Bell.

20   (Lodgment No. 17, vol. 6 at 600-01.)

21        The court later confirmed the stipulation, stating; "[t]his is [a stipulation] as to element 8 of

22   [reckless evasion] that the defendant drove the pursued vehicle; and, during the flight, there was

23   damage to both the vehicle and property, specifically a wall. [¶] Mr. Snipes, is that your stipulation?"

24   (Lodgment No. 17, vol. 6 at 604.)  Sniped responded, "That is, your Honor."  (*Id.*)

25        However, at a later point in the proceedings, Snipes was confused when the court refused to

26   let him to introduce evidence regarding the speed at which he left the parking lot for purposes of

27   impeaching Officer Bassett, who testified he was driving eighty miles per hour when she lost sight

28   of him.  (Lodgment No 17, vol. 6 at 630.)  The court explained that Snipes had already stipulated to

element eight, the manner in which he drove the vehicle, therefore evidence concerning speed was no longer relevant. (*Id.* at 631-32.) Snipes responded, "the stipulation was only to the accident as far as how fast I was going at the time making the turn. The speed as to whether or not I knew it was officers or whether I didn't, you know? That's, of course, going to have to be relevant as far as impeachment." (*Id.* at 631-32.) The court reiterated that he had already stipulated to the element concerning the manner in which he drove the vehicle therefore any evidence of speed was irrelevant. (*Id*. at 632-33.) Snipes countered that he "never stipulated to anything as far as the flight from Taco Bell to the accident. I've stipulated only from the point of coming up on Pontiac and the accident itself and the speed." (*Id.* at 632.) The Court responded, "[a]nd by doing that, you agreed that there was property damage during the flight." (*Id.*) To which Snipes stated, "That's no problem." (*Id*. at 633.)

The next day, the trial court asked whether Snipes understood the stipulation, stating: "I'm concerned that you said that there was a stipulation which you now don't understand or something." (Lodgment No. 17, vol 7 at 715.) Snipes responded that he was unclear about whether speed was still at issue, particularly the speed of the vehicle at impact. (*Id.*) At that point the prosecutor stated, "the Court specifically asked Mr. Snipes if he was stipulating to element 8 of [count three] as revealed in the CALJIC instruction; that is, that he was driving with a willful and wanton disregard for the safety of others and property. Mr. Snipes said, yes, he was stipulating." (*Id.* at 715-16.) Snipes argued in response that "I never stipulated to that particular element because I said that I was forced and provoked into driving. I wasn't driving willfully or knowingly. I didn't have a specific intent to get behind that wheel and drive off. I never had - - I never was the cause of the accident. The door was the cause of the accident." (*Id*. at 716-17.) Snipes went on to state that he drove the vehicle because he was in fear, not knowing who had approached him in the Taco Bell parking lot, and that because fear was one of his defenses, he would not have stipulated to having the specific intent to drive with a willful and wanton disregard for safety of others and property. (*Id.* at 717.) The trial court clarified the matter as follows:

> Court:      What you were doing at the time of the accident, that is related to Item 8, element 8. Why you departed was the focus that you told me you were going to have; that you were - - it was - - you were lawfully departing the presence of the police. And that's what your defense was going to relate to.

| | | |
|---|---|---|
| 1 | Snipes: | I was - - |
| | Court: | The fact that while you were being pursued there was an accident and property |
| 2 | | damage occurred, that's what you stipulated to.  So you - - |
| | Snipes: | Right. |
| 3 | Court: | - - haven't given up - - sir, you did not give up the defense of fear.  But it's - - |
| | | the focus is what was going on when you departed the Taco Bell.  That's the |
| 4 | | focus.  Not what was in your mind or what you were doing when the vehicle |
| | | hit the wall. |
| 5 | Snipes: | Your Honor, as to Count 3, it requires, you know, either three different traffic |
| | | violations or it's going to require property damage.  That property damage by |
| 6 | | itself carries that particular element factor. [¶] I agree that the accident |
| | | occurred.  I agreed that - - I stipulate, you know, that I was behind the wheel |
| 7 | | prior - - and prior to the vehicle slamming into the wall.  That's obvious.  I've |
| | | always agreed to that.  And that stipulation wasn't anything to me.  I didn't |
| 8 | | care about that." |

9    (Lodgment No. 17, vol. 7 at 717-18.)

10    The court later instructed the jury  regarding element 8 that:

11    The driver of the pursued vehicle drove the vehicle in a wanton disregard for
the safety of persons or property. [¶] It is this final element, 8, that relates to the
12    manner of the defendant's driving that the parties have stipulated to.  The parties have
stipulated that element 8 is a fact.  You must regard element 8 as having been proven
13    beyond a reasonable doubt. [¶] That stipulation only goes to element 8.  It does not
impact the requirement of the prosecution to prove the other elements of the offense.

14

15    (Lodgment No. 17, Rptr's Tr, vol. 8 at 959.)

16    As demonstrated by the record, the trial court made repeated efforts to explain the content of

17    the stipulation to Petitioner and sufficiently determined that the stipulation was voluntary prior to

18    accepting it.  *See United States v. Miller*, 588 F.2d at 1264.  In response to Snipes' concern that by

19    stipulating to element 8 he would lose the ability to present a fear defense, the court assured him that

20    the stipulation would not impact his ability to present evidence to support that defense.  The Court of

21    Appeal's determination that Snipes' stipulation was knowing and voluntary was not contrary to, or

22    an unreasonable application of, clearly established federal law.

23    Even if Snipes did not voluntarily or knowingly enter into the stipulation, the error did not

24    affect the jury's verdict and is therefore harmless.  Both the owner of the vehicle and Officer Bassett

25    testified that property damage occurred, in addition to Snipes' stipulation to damage.  (Lodgment No.

26    17, vol. 8 at  970-71, 1085.)  The Court of Appeal noted on direct appeal that, because there was no

27    dispute that property damaged happened, "even without the stipulation and instruction, there was no

28    reasonable probability of a more favorable result."  (Lodgment No. 5 at 5 n.4.)  Snipes has failed to

1   establish that the error had a "substantial and injurious effect or influence in determining" the jury's

2   verdict.  *Brecht*, 507 U.S. at 637-38.  The California Court of Appeal's denial of this claim was

3   therefore, not contrary to, nor an unreasonable application of, clearly established federal law.  *Himes*,

4   336 F.3d at 853.

5   //

6   //

7   //

8       **5.      Stipulation Constituted Impermissible Presumption of Element of Crime**

9           **(Claim 7)**

10          Snipes argues in claim seven that his federal due process rights were violated because his

11  stipulation to element 8 in count three concerning property damage created an unconstitutional

12  mandatory presumption that he acted with deliberate disregard for the safety of people and property,

13  thereby relieving the prosecution of the burden of proof as to intent.  (FAP at 19-20.)  Snipes

14  specifically argues that California Vehicle Code section 2800.2(b) creates an unconstitutional

15  mandatory presumption which imputes specific intent to act with reckless disregard for the safety of

16  people and property to a person simply because damage occurred as the result of a police pursuit.  (*Id*.)

17  Snipes argues that because specific intent is an element of the crime, it must submitted to the jury,

18  which was not done here.  (*Id*. at 25.)

19          Respondent claims that Snipes' stipulation did not create a mandatory presumption, and that

20  the stipulation as read to the jury was "in accord with California's statutory definition of wilful or

21  wanton disregard."  (Mem. P&A Supp. Answer at 23.)  Therefore, Respondent argues that the

22  California Court of Appeal reasonably rejected Snipes' mandatory presumption claim.

23          Snipes raised this claim in a sufficiency of the evidence claim in his Petition for Review with

24  the California Supreme Court.  (Lodgement No. 6 at 24.)  The Court silently denied Snipes' claim.

25  (Lodgment No. 7.)  Because the Supreme Court issued a silent denial, the Court must "look through"

26  to the California appellate court's decision denying the claim.  *See Ylst*, 501 U.S. at 801-06.  As he

27  did

28  in his petition for review, Snipes raised this issue in his sufficiency of the evidence claim to the Court

1  of Appeal.  (Lodgment No. 4.)  The court stated that:

2        [W]e note there was no dispute (and Snipes unquestionably stipulated below)
       that property damage occurred.  Section 2800.2, subdivision (b) "sets out the
3      Legislature's *definition* of what qualifies as willful and wanton conduct under
       subdivision (a).  Although Vehicle Code section 2800.2 uses the phrase 'willful or
4      wanton disregard for the safety of persons or property' to describe an element of
       reckless evading, the statute defines this element so that it may be satisfied by proof
5      of property damage. . . .  Thus, section 2800.2, subdivision (b) establishes a rule of
       substantive law. . . .In other words, evasive driving during which [property damage
6      occurs] *is* a violation of section 2800.2 '*because of the substantive statutory definition
       of the crime*' rather than because of any presumption.

7

8  (Lodgment No. 5 at 5, n.4.)

9

10      "The Due Process Clause of the Fourteenth Amendment denies States the power to deprive

11  the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the

12  charged offense." *Carella v. California*, 491 U.S. 263, 265 (1989) (citing *Winship*, 397 U.S. at 364.

13  Where a defendant's intent is an element of a charged crime, the trial court cannot remove

14  determination of intent from the purview of the jury via a legal presumption of wrongful intent based

15  on proof of specific facts.  *Morissette v. United States*, 342 U.S. 246 (1952).  Similarly, "[a]

16  presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the

17  defendant" would also be infirm.  *Mullaney v. Wilbur*, 421 U.S. 684 (1975).  The Ninth Circuit has

18  held that a trial court "may not create mandatory presumptions which relieve the prosecution of its

19  burden to prove facts to the jury beyond a reasonable doubt." *Medley v. Runnels*, 506 F.3d 857, 862

20  (9th Cir. 2007) (citing *Sandstrom v. Montana*, 442 U.S. 466, 490 (1979).

21      At the time of Snipes' conviction, California Vehicle Code section 2800.2 stated:

22        (a) If a person flees or attempts to elude a pursuing peace officer in violation
       of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for
23      the safety of persons or property, the person driving the vehicle, upon conviction, shall
       be punished by imprisonment in the state prison, or by confinement in the county jail
24      for not less than six months nor more than one year. The court may also impose a fine
       of not less than one thousand dollars ($1,000) nor more than ten thousand dollars
25      ($10,000), or may impose both that imprisonment or confinement and fine.

26        (b) For purposes of this section, a willful or wanton disregard for the safety of
       persons or property includes, but is not limited to, driving while fleeing or attempting
27      to elude a pursuing peace officer during which time either three or more violations that
       are assigned a traffic violation point count under Section 12810 occur, *or damage to
28      property occurs.*

   (Cal. Veh. Code § 2800.2) (emphasis added).

1       Contrary to Snipes' assertions, the fact that property damage occurred during a pursuit does

2  not create a mandatory presumption that the driver acted with a willful or wanton disregard for the

3  safety of people or property.  Rather, section (b) provides a non-exhaustive list of conduct, including

4  three or more point violations, and property damage, which demonstrate that the driver was reckless

5  during the pursuit.  As the Court of Appeal noted, the Legislature intended section (b) to include proof

6  of property damage as a substantive statutory definition of the crime rather than a presumption.  In

7  support of his claim, Snipes cites *People v. Roder*, 33Cal.3d 491 (1983), which in turn relies on

8  *Sandstrom v. Montana*, 442 U.S. 510 (1979), for the proposition that a mandatory presumption which

9  relives the prosecution of its burden of proof is unconstitutional.

10      In *Sandstrom*, the defendant was convicted of deliberate homicide, committed purposely or

11  knowingly, under a Montana statute.  442 U.S. at 520.  Because the defendant had confessed to

12  causing the death of the victim, the only element to be proved to the jury was whether he acted

13  "purposely or knowingly."  *Id.*  The trial court instructed the jury that "the law presumes a person

14  intends the ordinary consequences of his voluntary acts," which created the probability that the jury

15  would interpret this presumption as either conclusive of guilt, or that it shifted the burden to the

16  defendant to prove he did not act with the requisite intent.  *Id.* at 510.  Either interpretation would

17  have violated the Fourteenth Amendment's mandate that the state prove every element of a criminal

18  offense beyond a reasonable doubt, therefore, the Supreme Court held that the instruction was

19  unconstitutional.  *Id.*  Regarding the potential that the infirm instruction shifted the burden of proof

20  to the defendant, the Court noted that the jury "could have concluded that upon proof by the State of

21  the slaying, and of additional facts not themselves establishing the element of intent, the burden was

22  shifted to the defendant to prove that he lacked the requisite mental state" which was an

23  unconstitutional presumption.  *Id.* at 524 (citing *Mullaney v. Wilbur*, 421 U.S. 684 ( 1975).)  The State

24  was thus not forced to prove 'beyond a reasonable DOUBT . . .  EVERY FACT NECESSARY TO

25  CONSTITUTE the crime . . .charged.'"  *Id.* at 511 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)

26  (capitals in original).

27      Unlike the jury instruction in *Sandstrom*, Snipes' stipulation to element 8 of count three, and

28  the trial court's jury instruction concerning the stipulation, did not relieve the prosecution of its burden

to prove the remaining elements of the charge beyond a reasonable doubt.  The trial court instructed the jury:

> Defendant is accused in Count 3 of having violated section 2800.2(a) of the Vehicle Code, a crime.
>
> In order to prove the crime charged in Count 3, the prosecution must prove beyond a reasonable doubt each of the following elements:
> . . . .
>
> 8.  The driver of the pursued vehicle drove the vehicle in a wanton disregard for the safety of persons or property.
>
> The parties have stipulated that element 8 is a fact.  You must regard element 8 as having been proven beyond a reasonable doubt.

(Lodgment No. 17, at 1469.)

Rather than shift the burden to Snipes, the jury instruction clearly established that the prosecution was required to prove all elements of the crime beyond a reasonable doubt, and that both Snipes and the prosecution had agreed upon the stipulation to element 8, which the jury could then regard as proven beyond a reasonable doubt.  Contrary to the instruction in *Sandstrom*, which allowed the jury to presume defendant acted with the required intent simply because he had confessed to causing the victim's death,  Snipes' jury was instructed that it had to find seven of the eight elements comprising the crime beyond a reasonable doubt before it could find Snipes guilty of the charge.  Snipes' stipulation to element 8 did not force the jury to presume that, because he stipulated to driving with wanton disregard to the safety of persons and property, he possessed the specific intent required to be found guilty of reckless evasion.   *See Medley*, 506 F.3d at 862 (citing *Sandstrom*, 442 U.S. at 490).  In addition, Snipes' stipulation was voluntarily and knowingly entered into as demonstrated above, and he was advised by the trial court at the time that it constituted an admission of element 8 which could lead to a conviction on the charge.  (*See* Report at IV(B)(4).)  For the reasons stated above, the Court of Appeal's denial of this claim was reasonable in light of clearly established federal law, and the Court recommends the claim be **DENIED**.

### 6.   Trial Court Misapplied Mental State for Reckless Evasion (Claim 8)

In claim eight, Snipes argues that "Judge Krauel and the prosecutor deliberately misinterpreted *People v. Estrella* (1995) 31 Cal.App.4th 716, contrary to related precedent, and even misdirected and manipulated the objective reasonableness doctrine" as it related to count three, reckless evasion under

1    California Vehicle Code 2800.2, thereby altering the charge from a specific intent crime to a general

2    intent crime.  (FAP at 20-21.)  Snipes asserts that this error adversely impacted the court's rulings on

3    evidence, witnesses, closing arguments, and defense instructions in violation of his federal due process

4    rights.  (Mem. P&A Supp. FAP at 27.)

5         Respondent counters that Snipes' claim involves the construction of state law,  and because

6    he fails to state a federal claim, this court cannot grant habeas relief.  (Mem. P&A Supp. Answer at

7    23.)  In the alternative, Respondent claims that the California Supreme Court reasonably rejected

8    Snipes' claim on state habeas.  (*Id.*)

9         Petitioner raised this claim in a petition for writ of habeas corpus in California Supreme Court,

10   which was silently denied.  (Lodgment Nos. 13, 14.)  In his petition for writ of habeas corpus filed in

11   the California Court of Appeal, Snipes included this argument within his claim of insufficient

12   evidence.  (Lodgment No. 11, vol. 1 at 12.)  The court of appeal denied the claim, stating that it was

13   precluded from reviewing the claim because Snipes did not raise the claim on direct appeal, and had

14   not make a showing of special circumstances to excuse the failure, citing *In re Harris*, 5 Cal.4th at

15   829.  (Lodgment No. 12.)  Respondent does not contend that claim eight is procedurally defaulted.

16   This Court conducts a de novo review of the claim because the appellate court denied the claim citing

17   procedural default.  *Pirtle*, 313 F.3d at 1167.

18        In general, a state court's interpretation of state law is binding on a federal court.  *See*

19   *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Missouri v. Hunter*, 459 U.S. 359, 368 (1983); *Bueno*

20   *v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993).  However, a defendant's federal due process rights can

21   be violated if a state law is applied arbitrarily, rendering the proceedings fundamentally unfair.

22   *Estelle*, 502 U.S. at 67-68; *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991).

23        As noted above, Snipes was charged on June 13, 2003, with one count of evading a pursuing

24   police officer with reckless driving under California Vehicle Code section 2800.2(a).  (Lodgment No.

25   1, vol. 1 at 1-2.)  Section 2800.2(a) provides penalties for a person who is found to have violated

26   Section 2800.1 of the vehicle code for reckless evasion.[17]  Cal. Veh. Code § 2800.2(a).  In order to find

27

28        [17]California Vehicle Code section 2800.1(a) provides: " Any person who, while operating a motor
     vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's
     motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than

1   a defendant guilty of violating section 2800.1(a) the prosecution was required to prove each of the

2   following elements under section 2800.2(a) beyond a reasonable doubt:

3   //

4   //

5   //

6         1.      A person, while operating a motor vehicle, willfully fled or otherwise attempted to elude a pursuing peace officer;

7         2.      The defendant did so with the specific intent to evade the pursuing peace officer;

8         3.      The peace officer's vehicle exhibited at least one lighted red lamp visible from the front;

9         4.      The defendant saw or *reasonably* should have seen the red lamp;
        5.      The peace officer's vehicle sounded a siren, as reasonably necessary;

10         6.      The peace officer's motor vehicle was distinctively marked;

11         7.      The peace officer's motor vehicle was operated by a peace officer wearing a distinctive uniform; and

12         8.      The driver of the pursued vehicle drove the vehicle in a wanton disregard for the safety of persons or property.

13   (CALJIC 12.85) (emphasis added).

14   Snipes argues that the prosecution and trial court applied the reasonable person test as

15   announced in *Estrella*, to all eight of the above elements of count three, reckless evasion, rather than

16   limiting it just to element four, resulting in the loss of his defense that he did not know that his

17   pursuers were police officers.  (FAP at 20.)

18   In *Estrella*, the defendant was pursued by a police vehicle that did not bear the distinctive

19   black and white markings, but which had a light bar on the windshield which displayed one steady red

20   light in the center, a blue flashing light on one side, and a red flashing light on the other during the

21   chase.  *Estrella*, 31 Cal. App.4th at 720.  Despite the light bar being activated, defendant did not stop

22   but instead sped up and ran two stop signs.  *Id.* at 720.  The appellate court noted that in order for a

23   defendant to be found guilty of section 2800.2, the police vehicle must have displayed at least one

24   lighted red lamp visible from the front which the person either saw or *reasonably* should have seen

25   during the pursuit.  *Id.* at 721(citing Cal. Veh. Code § 2800.1(a))(emphasis added).  The Court stated

26   ――――――――――――――

27   one year if all of the following conditions exist: (1) the peace officer's vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.

28   (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.  (3) The peace officer's motor vehicle is operated by a peace officer as defined in Chapter 4.5 . . . and that peace officer is wearing a distinctive uniform."  Cal. Veh. Code §2800.1(a).

1   that it was "incredible to believe or even seriously argue that a reasonable person, upon seeing a

2   vehicle in pursuit with flashing red and blue lights, wigwag headlights and hearing a siren, would have

3   any doubt that said pursuit vehicle was a police vehicle." *Id.* at 723.  Defendant was found guilty

4   under California Vehicle Code section 2800.2 of evading a peace officer because he knew, or

5   reasonably should have known, that a police vehicle was in pursuit.  *Id.* at 716.

6   //

7   //

8   //

9          Despite Snipes' allegations, the court did not misapply the reasonable person standard as

10  articulated in *Estrella*, and he did not lose his defense that he was unaware it was police in pursuit.

11  The record shows that Snipes testified that he did not know police were in pursuit: "[a]s I'm going

12  down the street, I'm looking in the rearview mirror. . . . There's no lights.  There's no flashlights.  No

13  siren.  I never seen no officers whatsoever. . . . But in this given situation, I didn't know who it was.

14  And if it was the police, you know, they never did come up behind me with the lights." (*Id.* at 1114.)

15  At the end of the trial, the jury was given CALJIC 12.85, in the form noted above with the exception

16  of the stipulation to element 8.  (Lodgment No. 17, vol. 11 at 1469.)  The court added that:

> [i]n the crime charged in Count 3, namely, a violation of Vehicle Code section
> 2800.2(a), there must exist a union or joint operation of act or conduct and a certain
> specific intent in the mind of the perpetrator.  The defendant must act with the specific
> intent to evade the pursuing peace officer.  Unless this specific intent exists, the crime
> to which it relates is not committed. ¶ A vehicle operated by a peace officer is
> distinctively marked when, in addition to a lighted red lamp and activated siren, the
> vehicle is of such appearance that a reasonable person would be able to recognize it
> as a peace officer's vehicle, and a person fleeing is on reasonable notice that pursuit
> is by a peace officer.

22  (*Id.* at 1470.)

23         The trial court correctly applied the controlling California law when it instructed the jury under

24  CALJIC 12.85 that the prosecution was required to prove every element of reckless evasion, other

25  than element 8 which had been stipulated to, beyond a reasonable doubt.  The jury was instructed that

26  it must find Snipes had the specific intent to evade a pursuing peace officer, but that it should apply

27  the reasonable person standard to element 4, whether Snipes saw or reasonably should have seen the

28  red lamp.  In order to determine whether elements 3, 5, 6, and 7 were satisfied to prove Snipes had the

specific intent to evade, the jury was told that it must decide whether a reasonable person would have been able to recognize the vehicle as a peace officer's vehicle.  This is an accurate statement of the law under *Estrella*, which held that a defendant is guilty of violating section 2800.2 if the pursuing peace officer's vehicle was 'distinctively marked' and the defendant knew, or reasonably should have known, that a police vehicle was in pursuit.  *Estrella*, 31 Cal.App. 4th at 716.  Accordingly, the trial court did not arbitrarily misapply the reasonable person standard of *Estrella* in violation of Snipes' federal due process rights.  *See Estelle*, 502 U.S. at 67-68; *Jammal*, 926 F.2d at 919-20.  In light of the above, the Court recommends that claim eight be **DENIED**.

### 7.   <u>Ineffective Assistance of Appellate Counsel (Claim 15)</u>

Snipes argues in claim fifteen that his due process rights were violated when his appellate counsel failed to raise all of the grounds he raises in the present petition, thereby suffering ineffective assistance of appellate counsel.  (Mem. P&A Supp. FAP at 45-48.)  Respondent argues that the California Court of Appeal reasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in denying Snipes ineffective assistance of appellate counsel because Snipes failed to demonstrate that counsel's performance was deficient or that he was prejudiced by the alleged deficiency.  (Mem. P&A Supp. Answer at 39-40.)

Snipes raised this claim in his petition for review filed in the California Supreme Court.  (Lodgment No. 13.)  The claim was silently denied.  (Lodgment No. 14.)  As before, this Court must "look through" to the last reasoned state court decision, which was that of the California Court of Appeal.  (Lodgment No. 12.)  The appellate court stated:

> For a petitioner to prevail on a claim of ineffective assistance of counsel he or she must establish that counsel "failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (*People v. Pope* (1979) 23 Cal.3d 412, 425.)  In addition, he must show he was prejudiced by counsel's deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Ledesma* (1987) 43 Cal.3d 171, 216.)  Petitioner has not shown that his appellate counsel's actions were in any way deficient, that any of the claims he now raises would have been successful had counsel brought them, or that he was prejudiced by any alleged deficiencies.

(Lodgment No. 12 at 2.)

"The proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477

1    U.S. 527, 535-36 (1986)).  Snipes must first show that his appellate counsel's performance fell below

2    an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  He

3    must then establish he was prejudiced by counsel's errors.  *Id.* at 694.  To establish prejudice, Snipes

4    must show a reasonable probability that he would have prevailed on appeal absent counsel's errors.

5    *Smith*, 528 U.S. at 285 (citing *Strickland*, 466 U.S. at 694).  "The performance component need not

6    be addressed first '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of

7    sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*, n. 144

8    (citing *Strickland*, 466 U.S. at 697).

9         Snipes contends that he suffered prejudice because appellate counsel refused to include many

10   claims that Snipes felt were meritorious in his petition for review.  (Mem. P&A Supp. FAP at 47.)

11   The Constitution does not require that counsel has "a duty to raise every 'colorable' claim suggested

12   by a client."  *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  In fact, a "hallmark of effective appellate

13   advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those

14   more likely to prevail."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones* at 751-752.)

15   Moreover, a thorough analysis of Snipes' claims in his current petition reveals that none of the claims

16   have merit, therefore, counsel's performance could not have been prejudicial because he would not

17   have been entitled to relief on direct appeal had counsel raised the claims.  For this reason alone, it

18   is clear that the appellate court reasonably applied *Strickland* and appropriately concluded that Snipes

19   failed to show his appellate counsel's performance was deficient, or that he was prejudiced by

20   counsel's performance.  *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002).  Snipes is not entitled to relief

21   on this claim.

22         **8.    Sentencing Error in Violation of Blakely (Claim 16)**

23        In claim sixteen, Snipes argues that the trial court relied upon a factor that was not proved to

24   the jury beyond a reasonable doubt when sentencing him, in violation of *Blakely v. Washington,* 542

25   U.S. 296 (2004).  (FAP at 26.)  Snipes specifically finds fault with the Court of Appeal's

26   determination that the trial court committed a *Blakely* sentencing error but that Snipes suffered no

27   prejudice because the trial court could have relied upon the eleven prior convictions as justification

28   for the upper term sentence.  (*Id.*)  Petitioner contends that he admitted two prior convictions solely

1   for impeachment purposes and the trial court impermissibly used the convictions for the dual purposes

2   of impeachment and as sentence enhancements.  (*Id*.)  Without the convictions Snipes argues there

3   are no other aggravating factors the courts could have relied upon to enhance his sentence.  (*Id*.)

4            Respondent counters that the Court of Appeal's conclusion that any error was harmless is

5   consistent with Supreme Court precedent, because the trial court could properly have imposed the

6   upper term sentence based on Snipes' prior criminal history.  (Mem. Supp. P&A 41.)

7   //

8   //

9            Snipes presented this claim in a petition for review to the California Supreme Court which

10   denied the claim without citation to authority.  (Lodgment Nos. 13, 14.)  As before, this Court must

11   "look through" to the California appellate court's decision denying the claim.  *See Ylst*, 501 U.S. at

12   801-06.  That court stated:

13            In this case, the trial court imposed the upper term on count one.  The probation
         report found no factors in mitigation, and cited four factors in aggravation, including
14            Snipes' numerous prior convictions and his prior prison terms.  [Internal Citations
         omitted]  Snipes cites nothing in the appellate record suggesting he contested either the
15            absence of mitigating factors or the accuracy of the factors cited in aggravation.
         Although the trial court articulated only one circumstance in aggravation (that Snipes'
16            conduct posed a threat to public safety), it also found no mitigating factors to support
         its selection of the upper term.  Although the factor articulated by the court to impose
17            the upper term was not determined by a jury beyond a reasonable doubt in violation
         of *Blakely*, we must determine whether this *Blakely* violation constitutes reversible
18            error.

19            Our analysis of this issue is informed by three principles.  First, a single factor
         in aggravation is sufficient to support the imposition of an upper term.  [Internal
20            citations omitted]  Second, the prior prison term factor [citation omitted] is a factor in
         aggravation that falls within the limited *Almendarez-Torres* [footnote omitted]
21            exception preserved by *Blakely* and *Apprendi* [citation omitted] and this factor need
         not be found true by the jury before it may be invoked by the court for upper term
22            decisions.  Finally, we believe the aggravating factor of the numerosity of Snipes' prior
         convictions need not be presented to a jury for determination [citations omitted]
23            because Snipes' criminal history involved numerous convictions for criminal conduct
         akin to the conduct for which he was convicted here.  [footnote omitted]

24

25            Although the trial court's reliance on the "threat to public safety" to impose the
         upper term appears to be error under *Blakely*, the court read and considered the
26            probation report listing all the aggravating factors, and we presume all relevant criteria
         were considered [citation omitted] when it made its sentencing decision.  Because
27            Snipes' prior prison terms and numerous prior convictions supported the sentencing
         choices below, we conclude any error was harmless beyond a reasonable doubt under
28            *Chapman v. California* (1967) 386 U.S. 18, 24.  Here, we are convinced that if the trial
         court had anticipated the holding in *Blakely*, it would have cited Snipes' prior prison
         terms and numerous prior convictions as a basis for imposing the upper term because

1   the trial court found no factors in mitigation to balance against the factors in
2   aggravation, it considered the probation report listing Snipes' lengthy criminal history,
    and it expressly rejected an available leniency option (concurrent sentencing) when
3   imposing the sentence.  Accordingly, the trial court's reliance on other factors is
    harmless beyond a reasonable doubt. [Citations omitted.]

4   (Lodgment No. 5 at 13-15.)

5       The Sixth Amendment to the United States Constitution guarantees a criminal defendant the

6   right to a trial by jury.  *Duncan v. Louisiana*, 391 U.S. 145, 149-150 (1968).  In *Apprendi v. New*

7   *Jersey*, 530 U.S. 466 (2000), the Court held that the Fourteenth Amendment right to due process and

8   the Sixth Amendment right to trial by jury incorporated therein, requires that "[o]ther than the fact of

9   a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

10  maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.*, at 476-77, 490.

11  In *Blakely v. Washington*, 542 U.S. 296 (2004),  the Court defined the term "statutory maximum" as

12  used in *Apprendi* to mean "the maximum sentence a judge may impose solely on the basis of the facts

13  reflected in the jury verdict or admitted by the defendant."  *Blakely*, 542 U.S. at 303.  The Court in

14  *United States v. Booker*, 543 U.S. 220 (2005), found that there "is no relevant distinction between the

15  sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant

16  to the Federal Sentencing Guidelines."  *Booker*, 543 U.S. at 235.  The *Booker* Court decided, however,

17  that if the factors used by a trial judge to impose a sentence in the upper range are not mandatory, but

18  merely advisory, "their use would not implicate the Sixth Amendment [because judges may] exercise

19  broad discretion in imposing a sentence within a statutory range."  *Id.* at 233.

20      The California Supreme Court in *People v. Black* attempted to salvage California's sentencing

21  scheme by finding that the "statutory maximum" for *Apprendi* purposes was the entire range of terms,

22  from lower through upper, and that because the factors used to impose upper terms were subject to

23  a reasonableness requirement, they were the functional equivalent of the advisory provisions of the

24  federal guidelines.  *Black*, 35 Cal. 4th at1255-56, *vacated by Black v. California*, 127 S.Ct. 1210

25  (2007). In *Cunningham v. California*, 549 U.S. 270 (2007), however, the Supreme Court held that

26  California's determinate sentencing law ("DSL") violated a defendant's Sixth Amendment right to

27  a trial by jury because it placed sentence-elevating fact-finding within the judge's province.  *Id.*  The

28  Court stated that California's sentencing scheme was unconstitutional to the extent it permitted

1  imposition of upper term sentences based on findings made by a judge, other than the fact of a prior

2  conviction, under a preponderance of the evidence standard, rather than by a jury beyond a reasonable

3  doubt.  *Id.*

4        Subsequently the California Supreme Court vacated its earlier decision in *People v. Black*

5  ("*Black I*"), after a remand from the United States Supreme Court for reconsideration in light of

6  *Cunningham.  See People v. Black*, 41 Cal. 4th 799, 805 (2007) ("*Black II*").  *Black II* upheld Black's

7  sentence, finding that, "under the DSL[,] the presence of one aggravating circumstance renders it

8  lawful for the trial court to impose an upper term sentence."  *Id.* at 815.

9        Recently, the Ninth Circuit determined that *Cunningham* should be applied retroactively.  In

10  *Butler v. Curry*, 528 F.3d 624 (9th Cir. 2008), the court reasoned that "the Supreme Court's Sixth

11  Amendment case law at the time Butler's conviction became final compelled the conclusion that

12  California's DSL was unconstitutional" and therefore, *Cunningham* did not announce a new rule of

13  constitutional law under the *Teague* non-retroactivity rule.  *Id.* at 634.  Accordingly, the court held

14  that because *Cunningham* did not announce a new rule of constitutional law it may be applied

15  retroactively on collateral review.  *Id.* at 639.  The case law on a defendant's Sixth Amendment rights

16  was therefore clearly established when Snipes' conviction became final.  *See Id.* at 640.

17        The trial court sentenced Snipes to the upper term of three years for the unlawful taking of a

18  motor vehicle (count one) because it found that there were no mitigating factors and Snipes' conduct

19  posed a threat to public safety.  (Lodgment No. 17, vol. 12 at 1631.)  The Court of Appeal correctly

20  held that the trial court violated *Blakely* when it imposed the upper term sentence on count one based

21  solely on the lack of mitigating factors and "the threat to public safety posed by the defendant's

22  conduct" which were facts not determined by a jury beyond a reasonable doubt.  *See Blakely*, *supra*,

23  542 U.S. at 301.  Snipes argues that the Court of Appeal incorrectly determined that he had sufficient

24  prior convictions to render the trial court's violation of *Blakely* harmless because he admitted a 1983

25  robbery conviction for three strikes purposes and a 1998 conviction for evading for prison prior

26  purposes along with five others solely for impeachment purposes, and they cannot also serve the dual

27  purpose of also supporting an enhanced upper term sentence.  (FAP at 26.)  Snipes cites no authority,

28  nor has the Court found any support, for the proposition that prior convictions cannot be included in

1    a stipulation for impeachment purposes and also considered by the trial court when sentencing a

2    defendant.

3        The Court need not reach this question, however, because Snipes admitted his 1983 conviction

4    pursuant to California Penal Code section 211 and a subsequent prison term during the in limine

5    hearing on October 14, 2003, which he acknowledged could be used as a sentence enhancement if he

6    was convicted of one of the crimes charged.  (Lodgment No. 17, vol. 3 266.)  The Court asked:

7    //

8    //

9        Court:      So at this point you are waiving your right to a jury trial and your right to
                     confront witnesses and the privilege against self-incrimination; is that correct?
10       Snipes:      In relation to the 211?
         Court:       Yes.
11       Snipes:     In relation to the enhancement capabilities, yes, sir.
         Court:      And you understand that that enhancement would double the sentence if you
12                   are convicted of one or the other crimes?
         Snipes:     Yes, sir.  We went through that in Judge Deddeh's courtroom.
13       Court:      Do you admit or deny the allegation?
         Snipes:     I admit the prior conviction.

14

15    (Lodgement No. 17, Rprtr's Tr. vol 3. at 266.)

16       In light of the above, it is disingenuous for Snipes to now assert that he was unaware that his

17   admission of a prior conviction could potentially double his sentence when he was found guilty of

18   count one.  Furthermore,  the trial court stated that it read and considered the probation report which

19   lists four possible circumstances in aggravation, including Snipes' numerous prior convictions before

20   sentencing him.  (Lodgment No. 1, vol. 7 at1500.)  Under *Apprendi*, it would have been permissible

21   for the trial court to rely on the fact of Snipes' prior convictions when sentencing him to the upper

22   terms on count one.  *See Apprendi*, 530 U.S. at 490.  The probation report stated that Snipes had

23   twelve prior convictions for various offenses including: robbery with a firearm, evading arrest, driving

24   while intoxicated, resisting arrest, reckless driving, battery, disorderly conduct, burglary, concealing

25   stolen property, grand larceny, second degree burglary, and two separate escapes from penitentiary.

26   (Lodgment No. 1, vol. 7 at 1493-96.)

27       The Ninth Circuit has held that the presence of only one aggravating factor is required to

28   authorize an upper term sentence, as long as that "factor alone would suffice to render the sentence

1    constitutional if found applicable in a manner consistent with the Sixth Amendment." *Butler*, 528

2    F.3d at 641.  The presence of twelve prior convictions in Snipes' record satisfies the requirement

3    under *Apprendi* and is sufficient to justify the imposition of the upper term sentences on count one.

4    *See Apprendi*, 530 U.S. at 490.  As the Court of Appeal correctly held, it was harmless error that the

5    trial court cited reasons other than Snipes' prior convictions to support the upper term sentence.

6    Accordingly, the Court of Appeal's denial of this claim was not contrary to, nor an unreasonable

7    application of, clearly established federal law.

8    //

9        **9.    Cumulative Error (Claim 17)**

10       Finally, in claim seventeen, Snipes contends that the cumulative effect of all the

11   aforementioned errors was to render his trial fundamentally unfair.  (Mem. P&A Supp. FAP at 49.)

12   Respondent counters that the alleged errors, if any, did not cumulatively or individually render the trial

13   fundamentally unfair, and therefore the state appellate court's denial of this claim was reasonable.

14   (Mem. P&A Supp. Answer at 42.)

15       "Although no single alleged error may warrant habeas corpus relief, the cumulative effect of

16   errors may deprive a petitioner of the due process right to a fair trial." *Karis v. Calderon*, 283 F.3d

17   1117, 1132 (9th Cir. 2002).  The Ninth Circuit has explained that "[c]umulative error applies where,

18   'although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the

19   cumulative effect of multiple errors may still prejudice a defendant.'" *Mancuso v. Olivarez*, 292 F.3d

20   939, 957 (9th Cir. 2002) (quoting *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996)).

21       As discussed in this Report and Recommendation, the Court has concluded that Snipes did not

22   suffer any prejudice from any alleged errors in the sixteen independent claims Snipes' raised.

23   (*See* Report at Section IV, B.)  Thus, Snipes did not suffer any cumulative effect of the alleged errors,

24   and the state court's denial of this claim is neither contrary to, nor an unreasonable application of,

25   clearly established Supreme Court law.  *Williams*, 529 U.S. at 412-13.  Snipes is not entitled to relief

26   as to this claim.

27   //

28   //

1  //

2  //

3  //

4  //

5  //

6  //

7  //

8  //

9

## VI.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the district court issue an order:  (1) approving and adopting this Report and Recommendation, and (2) directing that judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than <u>March 12, 2009</u>**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than <u>March 26, 2009.</u>**
The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED:  January 27, 2009

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court