FILED

FEB 2 5 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ⎰⎱                          DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

BEN ALAN SNIPES,

                                   Petitioner,

vs.

JAMES E. TILTON, Secretary of the
California Department of Corrections and
Rehabilitation,

                                   Respondent.

CASE NO. 06CV2531-LAB (AJB)

**ORDER ADOPTING REPORT
AND RECOMMENDATION, AND
DENYING PETITION FOR WRIT
OF HABEAS CORPUS**

Petitioner Ben Alan Snipes, a prisoner in state custody, filed his petition for writ of habeas corpus in this Court. Pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72, it was referred to Magistrate Judge Anthony Battaglia for a report and recommendation. After receiving briefing, Judge Battaglia issued his report and recommendation (the "R&R"), in which he recommended denying Snipes' petition for writ of habeas corpus. Although Respondent argued that most claims were procedurally barred, the R&R determined that reaching the merits would be more efficient. Snipes then filed voluminous objections to the R&R.

/ / /

/ / /

1  I.      **Legal Standards**

2          A.      **Objections to R&R**

3          A district court has jurisdiction to review a magistrate judge's report and

4  recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must

5  determine de novo any part of the magistrate judge's disposition that has been properly

6  objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the

7  findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The

8  Court reviews de novo those portions of the R&R to which specific written objection is made.

9  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Courts are

10 not obligated to review vague or generalized objections to an R&R; a petitioner must provide

11 specific written objections to invoke the Court's review. *Dawson v. Ryan*, 2009 WL 4730731

12 at *2 n.1 (D. Ariz., Dec. 7, 2009) (citations omitted); *accord Sison v. Small*, 2010 WL

13 4806888 at *2 –*3 & n.2 (S.D.Cal., Nov. 18, 2010). Conclusory objections are likewise

14 insufficient. *Id.* at n.2.

15         The Court construes Snipes' pleadings liberally. *Karim-Panahi v. L. A. Police Dep't*,

16 839 F.2d 621, 623 (9th Cir. 1988). At the same time, the Court will not inject itself into the

17 adversarial process by creating arguments or making objections for him that are not fairly

18 presented in the pleadings. *See Holley v. County of Yolo*, 2007 WL 3274174, *5 (E.D.Cal.,

19 Nov. 5, 2007) (citing, among others, *Jacobsen v. Filler*, 790 F.2d 1362, 1365 (9th Cir. 1986)).

20 The 48-page body of the objections is followed by attached exhibits, which Snipes asks the

21 Court to read through. The Court is not required to, nor will it, comb the record in order to

22 develop arguments for Snipes. *See Stein v. Director of Corrections*, 2009 WL 3112421, slip

23 op. at *10 (E.D.Cal., Sept. 23, 2009) ("This court is not required, and hereby declines, to

24 comb the record in order to develop an argument for petitioner.") (citing *Stuard v. Stewart*,

25 401 F.3d 1064, 1066–67 (9th Cir. 2005)).

26         Finally, the Court notes that including an exhibit or a copy of another document is not

27 the same as making a "specific written objection" as contemplated under Rule 72(b)(2).

28 / / /

1  Exhibits or courtesy copies of legal authority may support objections, but they are not
2  themselves objections.

3  **B.    Federal Habeas Review**

4  In addition to the federal habeas standards correctly noted in the R&R, the Supreme
5  Court has recently issued decisions emphasizing certain standards for federal habeas
6  review.  The R&R is modified to include citations to these authorities.

7  A federal writ of habeas corpus is not available to correct errors of state law.
8  *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) (citations omitted).  And, an error of state law
9  is not a denial of due process.  *Id.* at 863 (citation omitted).

10  State courts are intended to be the principal forum for litigating constitutional
11  challenges to state convictions.  *Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011).  "A
12  state court's determination that a claim lacks merit precludes federal habeas relief so long
13  as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at
14  786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Federal habeas review
15  is a "'guard against extreme malfunctions in the state criminal justice systems,' not a
16  substitute for ordinary error correction through appeal." *Id.* at 787 (quoting *Jackson v.*
17  *Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

18  In view of the nature of Snipes' sundry objections, it is also appropriate to add that the
19  Court must assume the state court determinations of fact are correct, and Snipes has the
20  burden of rebutting this presumption by "clear and convincing evidence."  28 U.S.C.
21  § 2254(e)(1).

22  **II.    Discussion**

23  Snipes represented himself at trial.  To help him with interviewing witnesses, the trial
24  court provided him with a private investigator.  On December 15, 2003, a jury convicted
25  Snipes of one count of  unlawful taking of a motor vehicle without the owner's consent, one
26  count of receiving a stolen vehicle and one count of evading a police officer with reckless
27  disregard.  The R&R sets forth both the prosecution's case and the defense's case.
28  Although Snipes now adamantly contests the trial courts findings of fact, the established

1  facts are these:  On May 28, 2003, Snipes was found in the driver's seat of a stolen truck

2  parked at a Taco Bell.  San Diego Police Officer Bassett approached the parked vehicle.

3  During this contact, Bassett drew her weapon and Snipes drove off rapidly.  Bassett gave

4  chase and caught up with Snipes when he crashed the truck about one mile from the Taco

5  Bell.  Snipes was ejected from the driver's seat.

6        Snipes contends that a friend named "Steve" actually picked him up in the truck,

7  drove to Taco Bell, and went inside.  Snipes said he slid into the driver's seat and fell asleep.

8  He claims he wasn't aware it was a police officer who approached him in the parking lot.

9  Instead, he says he thought he was being robbed and sped away in fear for his life.  Snipes

10  argues that the evidence does not support that he could have seen police cruisers giving

11  chase before he crashed the truck.

12  **A. Overview of Objections**

13        Snipes filed an outlandish 318 pages of objections to the 71-page R&R.  He argues

14  the R&R is fraught with error, and that each of its findings is wrong.  He apparently made

15  some effort to order his objections so as to correspond to particular sections of the R&R, but

16  they are not in any very coherent order, and exhibits as well as other types of documents are

17  included in the objections.   This order reviews the main points raised in the objections.

18        In effect, Snipes wants to retry his entire case in this habeas petition.  That is not the

19  function of federal habeas review.  *Harrington*, 131 S.Ct. at 786–87.  Snipes' objections

20  amount to little more than his thoughts about his case.  Their nature and form is such that

21  specific written analysis of each one is impracticable.  The Court has, however, reviewed

22  them thoroughly and finds them meritless.

23        Snipes' objections, in large part, fall into one of several categories.   In many

24  instances, he does not make specific written objections to the R&R.  For example, Snipes

25  frequently accuses Judge Battaglia of bias or failing to read and understand the record or

26  his pleadings. That, by itself, is not a specific objection to the R&R.  An objection to the R&R

27  would identify something wrong with the R&R, either something in the R&R that should be

28  different, or something omitted from the R&R that should have been included.  Merely

06CV2531

1 │ attacking the magistrate judge's competence, diligence, or impartiality does nothing to

2 │ explain why the R&R is wrong. Furthermore, Snipes' allegations of bias are based solely on

3 │ adverse rulings or recommendations by Judge Battaglia, and adverse rulings, by

4 │ themselves, do not show bias. *See Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir.

5 │ 2008).

6 │      Snipes also objects that the state court misapplied California law. But errors of state

7 │ law cannot form the basis for federal habeas relief. *Swarthout*, 131 S.Ct. at 861. Snipes

8 │ cannot circumvent this principle by arguing that failing to apply California law properly was

9 │ a denial of his federal constitutional rights. *Id.*

10 │      In other objections, Snipes cites federal procedural law, arguing that the state court

11 │ erred by failing to apply or follow it. But, California courts are governed by state procedural

12 │ rules and requirements, and the Federal Rules of Criminal Procedure, Federal Rules of

13 │ Evidence, and federal criminal statutes do not govern criminal trials in state court.

14 │      Still other of Snipes' objections are actually recharacterizations of his claims in an

15 │ apparent effort to raise new (and unexhausted or otherwise unmeritorious) claims. For

16 │ example, the R&R pointed out that Snipes' investigator was not acting improperly by turning

17 │ over Snipes' psychiatric file to the prosecution. Snipes then objected, arguing Judge

18 │ Battaglia failed to understand he was really objecting to the state court's ruling, and that the

19 │ psychiatric file constituted work product. (Obj. to R&R, 17.) Putting aside that Snipes did

20 │ not adequately raise or exhaust this claim, and assuming that what he says is true, the

21 │ alleged error would be one of state law and cannot serve as a basis for federal habeas relief.

22 │      Finally, some of Snipes' objections fault the R&R for its writing style and organization

23 │ (for example, citing legal arguments in a different order than Snipes himself put them).

24 │ These objections are presumptious and trivial and don't affect the outcome in any way.

25 │      To the extent Snipes' objections do not fall into one of these categories, or where

26 │ further discussion would be helpful in clarifying the issue, they are discussed further below.

27 │ / / /

28 │ / / /

                           06CV2531

## B. Failure to Order State Habeas Corpus Records

Snipes objects to Judge Battaglia's failure to "order critical records and state habeas corpus records (the former equating to seven (7) volumes which include critical motions, and the state habeas alone more than 400 or so pages counting memorandum) . . . ." (Obj. to R&R, 2–3.)  In support of this proposition, he cites *Reigner v. Christensen*, 789 F.2d 1425 (9th Cir. 1989) and other pre-AEDPA cases.  Snipes' objection lacks merit for two reasons.

First, it doesn't identify anything in the R&R that should be changed, or anything missing from the R&R that should be there.  Instead, it just asks for additional documents, without explaining what the documents would show or why they are relevant.

Second, contrary to Snipes' assertion, he is responsible for pleading his own case. While the cases he relies on (which applied a now-superseded version of 28 U.S.C. § 2254), held that a district court must make independent factual findings, no case holds that a petitioner has a free-standing right to have the magistrate judge order and review the entire state court record, *sua sponte*, looking for unspecified errors.  *Stuard*, 401 F.3d at 1066–67.

## C. Accusations of Bias and Prejudice

Snipes sets forth several arguments why the state court judge was biased, including denial of a motion for continuance and his alleged undue influence over the private investigator.  These gripes are insufficient to qualify as specific written objections to the R&R. Snipes merely provides conclusory allegations that all of the events of the trial "indisputably establish extreme interference with a defense."  He doesn't direct the Court to any evidence that the state courts or Judge Battaglia overlooked; instead, he importunes this Court to be a fresh set of "eyes and ears."  The short answer to Snipes' contentions is the acts he identifies don't demonstrate bias or prejudice; they were simply adverse rulings.  *See Larson*, 515 F.3d at 1067.

## D. Continuance

Snipes sought a continuance to allow him to prepare for trial.  The judge found he hadn't shown good cause for a continuance, and hadn't shown he was diligent in preparing

/ / /

1   for trial. The judge did, however, postpone the trial by a week, which the R&R found

2   mitigated any hardship.

3        Standards for granting or denying continuances in state court are governed by state

4   procedural rules. Snipes admits this, arguing that denial of a continuance somehow shows

5   either the judge was biased or that he was denied effective assistance of counsel, which is

6   the subject of another objection and is discussed below.

7        After independently reviewing the record, the Court concludes the trial judge didn't

8   violate Snipes' federal constitutional rights by setting reasonable limits and requiring him to

9   comply with court rules, which were explained to him. The judge didn't act arbitrarily in the

10   face of a justifiable request for more time. *See Morris v. Slappy*, 461 U.S. 1, 11 (1983).

11        Furthermore, Snipes even now can't explain why another continuance was needed.

12   He points to various things he would have liked the investigator to look into, but he doesn't

13   explain why these matters were necessary or how he was harmed by the denial of a further

14   continuance. By way of example, he sought the testimony of twenty-one police officers as

15   witnesses to the accident. The court found he had already stipulated the accident occurred,

16   and that he failed to provide any clear explanation of why additional testimony on this point

17   would be helpful. (*See* Lodgment 17, 686:3–695:25.) This objection is therefore frivolous.

18       **E. Denial of Counsel**

19        These objections pertain to the trial court's refusal to allow Snipes to withdraw his

20   request for self-representation, and to the trial court's treatment of the investigator appointed

21   to assist Snipes.

22           **1.**     **Denial of Appointed Counsel During Trial**

23        Snipes waived his right to appointed counsel, and represented himself at trial. The

24   record shows his waiver was knowing and intelligent. After trial began, Snipes attempted to

25   withdraw from self-representation and insisted the court reinstate appointed counsel. The

26   trial court viewed Snipes' maneuvers as an attempt to delay the ongoing trial and denied

27   Snipes' motion. The trial judge further found Snipes could capably represent himself. This

28   / / /

1 ruling wasn't contrary to, nor did it involve an unreasonable application of clearly established

2 law. *See* 28 U.S.C. § 2254(d); *Menefield v. Borg*, 881 F.2d 696, 700 (9th Cir. 1989).

### 2. Interference with Investigator

4 Instead of directing the investigator to blindly obey Snipes' orders, the trial court gave

5 the investigator the authority to make certain decisions, such as which of the sixty witnesses

6 designated by Snipes he would interview and subpoena. Snipes argues his private

7 investigator was improperly influenced by the court, and that this violated his Sixth

8 Amendment right to counsel. (Obj. to R&R, 13.)

9 This claim lacks merit. To a great extent, the record demonstrates Snipes

10 misconceives what the investigator was doing, and why. His claim is largely based on his

11 own misunderstanding of the events leading up to his trial. Snipes also misrepresents the

12 record, since it is obvious many witnesses were subpoenaed based on his request, and not

13 on the investigator's judgment.

14 Snipes had a right to represent himself, and in doing so was allowed to present his

15 case as required under *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984). The U.S. Supreme

16 Court has never held that a self-represented criminal defendant has the right to the

17 assistance of an investigator, much less that he has the right to control the investigation to

18 the extent Snipes now contends. This claim provides no basis for federal habeas relief.

### F. Denial of Access

20 Snipes argues his Sixth and Fourteenth amendment rights were violated when he was

21 denied various types of assistance or access during trial. In his objections, he focuses on

22 denial of access to the law library, phone, witnesses, evidence, and his own files. He also

23 asserts Judge Battaglia failed to apply the standards set out in *United States v. Robinson*,

24 913 F.2d 712, 717 (9th Cir. 1990), that a defendant is entitled to "some access" to resources

25 to aid in his defense, the need for which "must be balanced against security considerations

26 and the limitations." (Obj. to R&R, 20.)

27 Read as factual allegations, Snipes' claims are false. Snipes <u>was</u> given access to

28 evidence, witnesses, his files, and outside materials. Snipes' real argument is the access

06CV2531

1 | he was given was insufficient, and effectively amounted to a denial.  The R&R recounted

2 | several ways in which the trial court accommodated Snipes, and provided him with "some

3 | access" to his files and other materials.  (R&R at 22–23.)   As an example, Snipes wanted

4 | a cart so he could bring his files in and out of the courtroom.  The court told Snipes it didn't

5 | have a cart to give him, so he could either carry the boxes himself, ask his runner to provide

6 | a cart, or store the boxes in the courtroom.  This accommodation was perfectly adequate.

7 | The record undercuts Snipes' claim that the trial court's "arbitrary denial is all recorded."

8 | (Obj. to R&R, 20).  Instead, what is apparent from the record is that Snipes was simply

9 | dissatisfied with the solutions offered by the trial court.  While not what Snipes wanted, there

10 | is no showing the accommodations were inadequate.

11 | On a related point, Snipes argues Judge Battaglia disregarded precedent when he

12 | did not consider the effect that denial to phone access had on his Sixth Amendment rights.

13 | (Obj. to R&R, 21.)  Once again, the objection misses the mark.  As Judge Battaglia noted,

14 | "Snipes does not point to, nor has the court found, any support for his claim that a criminal

15 | defendant is guaranteed a right to phone access during trial."   Just so, having rejected

16 | appointed counsel, Snipes did not have a right to the comprehensive resources counsel

17 | might otherwise have had during trial.  *See United States v. Wilson*, 690 F.2d 1267, 1271

18 | (9th Cir. 1982).

19 | **G.  Insufficient Evidence**

20 | This objection takes aim at the finding that Snipes knew or should have known he was

21 | fleeing from a police officer, an element of the reckless evasion charge.

22 | Snipes generally objects to the R&R because, in his view, it  "addressed short

23 | generalities or estimations that flatly conflict with the evidence . . . ."  (Obj. to R&R, 22.)

24 | Snipes then recites excerpts of testimony from which he concludes, "it is a grave doubt that

25 | I ever could have seen them other than heads and guns and — in fleeing the unknown

26 | assailants, was never physically able to have seen the red lamps activated."  (*Id.*, 25.)

27 | Snipes' rehashed recital of his theory of defense falls far short of the showing required

28 | for relief.  *See Jackson v. Virginia*, 443 U.S. 317, 319 (1970).  Even assuming the facts are

06CV2531

1   as Snipes selectively recites them, the evidence supports his conviction on the reckless

2   evasion charge.  Without attempting to address all of Snipes' counterpoints, that the officer

3   could see the truck Snipes was driving suggests that the flashing lights on top of her car

4   were visible from the truck.   Furthermore, Officer Bassett was in uniform when she

5   approached the truck in the Taco Bell parking lot.  This evidence supports an inference that

6   when Snipes was fleeing, he knew or should have known he was fleeing from a police

7   officer, which is what the jury found.

8           **H . Involuntary Stipulation**

9           Snipes attacks the stipulation he entered into that the accident resulted in property

10  damage.  He relies on *Adams v. Peterson*, 968 F.2d 835, 843–44 (9th Cir. 1992) for the

11  proposition that stipulations must be entered into knowingly and intelligently.  The state court

12  rejected Snipes' contention that he didn't knowingly or intelligently stipulate to property

13  damage.  This determination is fully supported by the record as cited in the R&R.  The record

14  proves the trial court went out of its way to ensure Snipes understood the nature of the

15  stipulation, confirming on several occasions that he knew he was stipulating that the accident

16  caused damage to the truck and to a wall, and that property damage was an element of the

17  charge.

18          **I. Unconstitutional Presumption**

19          Snipes argues that California Vehicle Code section 2800.2 imputes to the violator a

20  certain mental state, which unconstitutionally reduces the prosecution's burden of proof.  (*Id.*,

21  26.)   He contends that Judge Battaglia misunderstood this statutory challenge, and

22  "responded on the basis of impermissible burden shifting." (*Id.*, 26.)

23          This argument overlooks the R&R's recital of the Court of Appeal's decision, which

24  explained:

25          [W]e note there was no dispute (and Snipes unquestionably stipulated
            below) that property damage occurred. Section 2800.2, subdivision (b) "sets
26          out the Legislature's *definition* of what qualifies as willful and wanton conduct
            under subdivision (a).  Although Vehicle Code section 2800.2 uses the
27          phrase 'willful or wanton disregard for the safety of persons or property' to
            describe an element of reckless evading, the statute defines this element so
28          that it may be satisfied by proof of property damage. . . . Thus, section
            2800.2, subdivision (b) establishes a rule of substantive law . . . . In other

06CV2531

1   words, evasive driving during which [property damage occurs] is a violation
2   of section 2800.2 'because of the substantive statutory definition of the crime' rather than because of any presumption. [. . ."]

3   (R&R at 58.)

4   This holding does not amount to an unreasonable application of federal law, and this
5   Court is bound to accept it.

6   **J. Alteration of Standard**

7   Snipes also complains that the judge and prosecutor altered the application of
8   California Vehicle Code section 2800.2 in presenting the case to the jury. (Obj. to R&R, 27.)
9   In all respects, this is another argument about factual determinations and state law. Snipes
10  cites *People v. Estrella*, 31 Cal. App. 4th 716 (Cal. App. 5 Dist. 1995) and argues that he
11  didn't actually know he was being chased by a police officer and therefore could not have
12  specifically intended to evade a police officer. *Estrella* says nothing about specific intent; it
13  simply holds that "the test [for violation of Vehicle Code § 2800.2] is whether the person
14  knows or reasonably should know that a police vehicle is in pursuit."[1] 31 Cal. App.4th at 723.
15  In any event, how to properly construe the elements of Vehicle Code § 2800.2 is a question
16  of state law, and not a basis for federal habeas review.

17  **K. Improper Inducement to Testify**

18  Snipes makes a vague argument that he was compelled to testify against himself.
19  He relies on a dissent to a Supreme Court decision that argued requiring a defendant to
20  affirmatively prove self defense is the equivalent of compelling a defendant to testify.  The
21  Court follows the Supreme Court's precedents, not dissenting opinions.  That it might have
22  been advantageous to Snipes to testify about his own mental state doesn't amount to
23  compulsion.  *See, e.g., United States v. Wagner*, 834 F.2d 1474, 1483 (9th Cir. 1987)
24  (explaining that the Fifth Amendment isn't violated where a defendant's decision to testify
25  / / /

26

27  ---

[1] This test is included in the "Distinctively Marked Vehicle" section of the opinion, and
28  refers to whether the police vehicle is adequately identified by markings, lights, a siren, etc.
It does not eliminate the need to show that the defendant had the intent to evade. *See* 31
Cal. App. 4th at 721 (citing statutory elements).

06CV2531

1 is motivated by a lack of other evidence in his favor and a desire to maximize his chances

2 of acquittal).

3 **L. Denial of Jury Instructions**

4 Snipes makes several general objections relating to the trial court's failure to instruct

5 the jury on a self-defense and duress, and only giving a limited instruction on mistake of fact.

6 His position is the trial court should have instructed the jury on his defense theories even if

7 he didn't introduce sufficient facts to support them. (Obj. to R&R, 34.)

8 It isn't at all clear why denial of a self-defense or duress instruction, or the giving of

9 only a limited instruction on mistake of fact under these circumstances even begins to meet

10 the standard set forth in *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The jury, by finding

11 Snipes knew or reasonably should have known he was being pursued by police, implicitly

12 rejected his theory that he reasonably thought he was fleeing from robbers. *See, e.g., Wohl*

13 *v. Clark*, 2009 WL 6527711, *12 (E.D.Cal., Sept. 14, 2009) (explaining that error, if any, in

14 refusing a mistake of fact instruction for reckless evasion charge was harmless because by

15 convicting him, the jury had rejected the defendant's argument that he thought the police

16 officer was a carjacker). Thus, even if it was error to deny or limit Snipes' requested

17 instructions, the error was harmless beyond doubt.

18 **M. Improper Dual Conviction**

19 Snipes raises an inapt double jeopardy argument. *See Ball v. United States*, 470 U.S.

20 856, 861–62 (1985) (construing statute forbidding felons to receive or possess firearms).

21 He cites *People v. Garza*, 35 Cal. 4th 866 (2005) for the proposition that he cannot be

22 convicted of both taking and receiving the stolen truck. But *Garza* holds that "a defendant

23 who steals a vehicle and then continues to drive it after the theft is complete commits

24 separate and distinct violations of section 10851(a)." *Id.* at 880.

25 Here, the evidence clearly proved Snipes drove after arriving at a point of temporary

26 safety. Under *Garza*, he was properly convicted of both crimes. 35 Cal. 4th at 880. The

27 state court's determination that Snipes committed both the initial theft and later post-theft

28 driving implicates no provision of federal law.

## N.  Lesser Included Offense

Snipes argues the trial court should have given an instruction on the lesser included offense of joyriding.  The Supreme Court has left open whether such instructions are constitutionally required in non-capital cases.  *United States v. Carothers*, ___ F.3d ___, 2011 WL 198446, slip op. at *6 (9th Cir., Jan. 24 2011) (citing *Howell v. Mississippi*, 543 U.S. 440, 445 (2005)).  Thus, this claim cannot serve as a basis for federal habeas relief.  28 U.S.C. § 2254(d)(1).  The R&R didn't specifically note this point, and is therefore modified to include this analysis.

Furthermore, even if the Supreme Court were to determine that such an instruction were required as a general matter, it wasn't required here.  *See Hopper v. Evans*, 456 U.S. 605, 611–12 (1982) (holding lesser included offense instruction was not required when unwarranted by the evidence).  Snipes' version of the facts was that he borrowed the truck with the owner's permission, so the evidence didn't reasonably support a joyriding conviction.

## O.  Prosecutorial Misconduct

Snipes' objection here consists of several pages of unexplained discussion of his case.  (Obj. to R&R, 40–45.)  Most of the harangue has no bearing on prosecutorial misconduct, and amounts to an effort to rehash arguments already addressed.  Nothing in these objections shows how the prosecution committed misconduct, or points out any error in the R&R.  His vague and generalized objections are overruled.

## P.  Ineffective Assistance of Appellate Counsel

Snipes says his state appellate counsel refused to raise thirty-eight allegedly meritorious claims he says he asked his counsel to raise, and raised two claims ineffectively.

This generalized objection doesn't invoke the Court's review.  And, the Court's independent review finds no manifest deficiency in state appellate counsel's performance.

## Q.  *Blakely* Error

Snipes was sentenced to the upper state prison term for theft of a motor vehicle, based on the trial court's finding that he posed a threat to public safety.  The R&R noted that the California Court of Appeals found that this violated *Blakely v. Washington*, 542 U.S. 296

1 (2004) but it was harmless in light of the Snipes' twelve previous convictions. (R&R,

2 69:22–70:7.) *Blakely* errors are subject to harmless error review. *Washington v. Recuenco*,

3 548 U.S. 212, 222 (2006). Snipes never raised *Blakely* in his petition before the California

4 Supreme Court, and therefore hasn't exhausted this claim.

5       Snipes also cites *Cunningham v. California*, 549 U.S. 270 (2007), which hadn't been

6 decided at the time he filed his final state petition, but which the Ninth Circuit has since

7 determined should be applied retroactively on collateral review. *See Butler v. Curry*, 528

8 F.3d 624, 639 (9th Cir. 2008). *Cunningham*, like *Blakely*, expressly permits a sentencing

9 court to consider prior convictions without a jury finding. Snipes doesn't address the Court

10 of Appeal's determination of harmlessness, nor has he ever shown the Court of Appeals'

11 determination was wrong, much less that it met the standard set forth in 28 U.S.C. § 2254(d).

12     **R. Cumulative Error**

13       Snipes very generally invokes the "cumulative error doctrine." (Obj. to R&R, 47.)

14 There was none.

15 **III.   Conclusion and Order**

16       The Supreme Court has made clear a writ of habeas corpus is an extraordinary

17 remedy. Federal habeas review serves as a "'guard against extreme malfunctions in the

18 state criminal justice systems,' not a substitute for ordinary error correction through appeal."

19 *Harrington*, 131 S.Ct. at 787. There were no "extreme malfunctions" here.

20       The record shows Snipes received a fair trial and received all assistance and

21 accommodation he was constitutionally entitled to. He was not constitutionally entitled to

22 dictate what accommodations the trial court offered him, and the trial court's setting of

23 reasonable constraints didn't violate any federal right. He wasn't entitled to unlimited

24 assistance by an investigator. Although he now claims he was tricked or coerced into

25 entering into a stipulation about the accident, the record shows he was more than

26 adequately informed of what he was doing and the consequences of it. The instructions he

27 requested weren't constitutionally required, and his conviction for both taking and later

28 driving the truck doesn't offend double jeopardy. The evidence was easily adequate to

1  convict him on all counts.

2  The state court's determination that the *Blakely* error was harmless isn't an

3  unreasonable application of federal law.  Snipes' appellate counsel wasn't inadequate for

4  deciding to raise only two potentially meritorious claims and abandoning 38 flimsy claims.

5  Even assuming the state courts made any errors, they were errors of state law and

6  don't warrant federal habeas relief. *See Swarthout*, 131 S.Ct. at 861.

7  For these reasons, Snipes' objections to the R&R are **OVERRULED**.  With the

8  modifications noted in section I.B and II.N above, the Court **ADOPTS** the R&R. The petition

9  is **DENIED**.

10  The Court finds the standard for issuance of a certificate of appealability, *see*

11  *Hayward v. Marshall*, 603 F.3d 546, 554–55 (9th Cir. 2010) (en banc), is not met here. The

12  certificate of appealability is therefore **DENIED**.

13  **IT IS SO ORDERED.**

14  DATED: _____2·25-11_____

*Larry A. Burns*

15

16  **HONORABLE LARRY ALAN BURNS**
United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

06CV2531